Kenneth H. CUNNYNGHAM, Petitioner,

v.

P. J. DONOVAN, Deputy Commissioner, Seventh Compensation District, Bureau of Employees' Compensation, United States Department of Labor et al., Respondents.

Civ. A. Nos. 12287, 66–672.

United States District Court
E. D. Louisiana,
New Orleans Division.

July 26, 1967.

Leonard Fuhrer, Alexandria, La., for petitioner.

Frederick W. Veters, Edward L. Shaheen, Asst. U. S. Attys., New Orleans, La., for respondent.

Henry S. Alsobrook, Jr., New Orleans, La., for intervenor, Flour Corp., and Commercial Ins. Co. of Newark, New Jersey.

CASSIBRY, District Judge:

Petitioner, Kenneth H. Cunnyngham, was injured while employed by The Fluor Corporation on a construction project at an overseas United States military installation on December 20, 1953. As a result of his injuries, one leg had to be amputated above the knee, and he was left with a 35 per cent permanent disability of the other leg. His employer paid him compensation aggregating $11,000 under the Defense Base Act, 42 U.S.C. § 1651, et seq., which incorporates most of the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. Claiming that his disability was not limited to the specific losses upon which these payments were based, petitioner filed a claim in 1960 for permanent total compensation benefits. After hearing, the Deputy Commissioner issued a compensation order denying further compensation.

Petitioner appealed from this order; it was affirmed by the District Court.[1] He then appealed to the Court of Appeals, Fifth Circuit, which court reversed the compensation order, holding:[2]

"We think, however, the appellant has met the burden of showing that the evidence before the Deputy Commissioner does not support the compensation order complained of. Cf. Mississippi Shipping Co. v. Henderson, 5 Cir., 1956, 231 F.2d 457."

It then rendered the following decree:

"We, therefore reverse and remand for a retrial in due course.

Reversed and remanded."

Petitioner thereafter moved for judgment on the face of the record, but the disposition of this motion is not clear. In any event, the record was transmitted to the Deputy Commissioner for rehearing, including the admission of additional evidence, following which the Deputy Commissioner entered a second compensation order, again rejecting petitioner's claim.

From this second compensation order, the petitioner appealed to this Court and filed a motion for summary judgment on the record; respondent filed a cross-motion for summary judgment. Both motions having been duly briefed, argued and considered, I am of the opinion that petitioner is entitled to the relief he seeks. A considerable record was made on the first hearing before the Deputy Commissioner, including medical evidence and evidence as to petitioner's work record since the accident. It avails little to review this record in detail as the Court of Appeals, considering all of the evidence received on the first hearing, has held that this record did not support a denial of compensation. I agree with the Court of Appeals' decision.

For determination now are the two issues raised on the motions for summary judgment:

(1) Whether the Deputy Commissioner should have received additional evidence on the remand by the Court of Appeals; and, alternatively

(2) Whether the additional evidence which was received changed the picture

---

1. See record in Civil Action No. 12287, in the Eastern District of Louisiana, wherein Judge Ainsworth made detailed findings of fact.

2. Cunnyngham v. Donovan, 328 F.2d 694 (5 Cir., 1964).

to such an extent as to warrant an affirmance of the Deputy Commissioner's record denial of compensation.

Petitioner has argued that, despite the word "retrial" in the Court of Appeals' decree, the only purpose of the remand was to have the Deputy Commissioner enter an order consistent with the Court of Appeals' opinion—that is, order the payment of compensation. He cites a number of cases wherein other reviewing courts have indicated that no additional evidence is admissible on such remands; wherein reviewing courts have simply rendered their own judgments without ordering a remand; wherein the reviewing courts have indicated that a remand is limited to a mere reconsideration of the existing record without reception of additional evidence; and wherein the reviewing court remanded with specific instructions to the administrative tribunal as to exactly what order it should enter on remand.

It is my opinion that, in the particular context of this case and considering the language of the Court of Appeals' opinion, there was actually no need for further evidence on the remand. Respondent-Deputy Commissioner and intervenors (the employer and its insurer) have taken the position that, when the Court of Appeals stated that "the degree of disability cannot be measured by physical condition alone" and that "[o]ther factors must be considered, such as age, education, industrial history and the availability of work which appellant can do" (328 F.2d 694, 697), it was in effect calling for additional evidence on these factors. I doubt this is the case; a full record was already before the Court of Appeals relating to these factors, and it is my opinion that it was merely indicating that these factors had been taken into account in reaching its decision.

It is of no moment, however, in view of the other conclusions I have reached, whether the Deputy Commissioner should or should not have held another hearing. I have fully considered the additional evidence as having been properly received, and I nevertheless find the second compensation order to be erroneous.

Briefly to review the facts, at the time of the accident in 1953, petitioner was a 36 year old man who was a welder and burner by occupation and whose work record before the accident was good. After recuperating from his injuries overseas, and being left with essentially the same disability he now has (i.e., loss of one leg above the knee and 35 percent permanent disability in the other leg), he did manage to hold several other jobs, with his former employer and others, for various periods of time until November 11, 1959. He has held no jobs since. Consequently, his entire post-injury employment picture was before the Court of Appeals when it reversed the first compensation order. That Court found that petitioner "has had several jobs since his injury, but a close examination of the facts reveals that they were only temporary jobs and not of a permanent nature partly, at least, because of the duration and extent of his injury" (238 F.2d 694, 697).

The record of the first hearing contains the testimony of several witnesses, including some representatives of organized labor in the area of petitioner's work-experience, who related facts about unavailing efforts to obtain employment for petitioner following his last job and who also testified generally as to the unlikelihood of his being able to obtain any substantial steady work due to his physical handicaps. In addition, there is evidence of a rather dismal period during which petitioner tried to get work and eventually quit trying. He has become a Welfare recipient, drawing $60.00 per month in public assistance at the time he filed this appeal.

If indeed, as respondent and intervenors contend, the Court of Appeals wanted further evidence on or reconsideration of the factors of age, education, industrial history and the availability of work which petitioner can do, the second hearing offers nothing to change the picture.

(1) *Age.* Petitioner was born March 18, 1917 and was 36 years old when he was injured. He was 44 years old at the time of the original hearing. He is now over 50 years old. The age factor is more adverse than it was when the Court of Appeals had the case.

(2) *Education.* Nothing has changed for the better with regard to this factor since the Court of Appeals had the case. If anything, the educational factor (in the sense of learned manual skills) is more adverse.

(3) *Industrial history.* Between the accident and first hearing, petitioner had some history of industrial work. Since the first hearing, he has had no employment.

(4) *Availability of work which petitioner can do.* The only new evidence on the second hearing which the Deputy Commissioner found worthy of mention in his second compensation order bears upon this factor. It appears that a local machine shop was willing to hire handicapped men such as petitioner and offered to let him take a welding test to see whether he possessed the requisite skill to qualify. The hearing was recessed, and petitioner took a welding test at the machine shop. He failed to pass. Commenting upon this test, the Deputy Commissioner states:

> That at a formal hearing held November 15, 1965, testimony was offered by a representative of Ike Haggard Machine Works that employment as a welder was available in the area of New Orleans, Louisiana, and for persons with physical handicaps such as suffered by the claimant; that the claimant submitted to examination at that employer's establishment on the same date and failed to demonstrate sufficient knowledge of the work to warrant being hired; that his inability to qualify for the employment was not a result of the injuries sustained on December 30,1953.

This is the only finding the Commissioner made. It adds nothing to his previous finding which the Court of Appeals has already found to be inadequate to support his determinations.

The very essence of the notion that this extremely handicapped person could nonetheless hold substantial gainful employment is that he possessed a special skill which was desired in the labor market—welding. Thus, when it was demonstrated that he lacked this special skill, the very thing which might have made him employable was lacking.

Respondent and intervenors contend that the record shows petitioner did not try hard enough to pass the test, although petitioner himself claims he did his best. The Deputy Commissioner made no finding of fact bearing on this contention, and I am therefore not bound to assume either that he did or did not conscientiously try to pass the welding test. A review of the testimony does not persuade me that respondent and intervenors are correct, but even if I were to assume they were, I could not affirm the compensation order.

I do not believe, in view of the Court of Appeals' decision, that the burden was upon this seriously handicapped claimant to disprove his ability to obtain and hold any of the jobs which might conceivably be considered available to him, any more than it is incumbent upon a Social Security claimant to do so.[3] It is the reasonable availability, not the mere theoretical existence, of employment which determines disability under the Social Security Act,[4] and the tests to qualify for disability benefits under that Act are probably more stringent than under the Longshoremen's Act.

No evidence was introduced, on either hearing, tending to show that petitioner could compete successfully in the labor market or command the same wage, proportionately speaking, as he did in 1953 when he was injured. The evidence is that he would have been paid the "going

---

3. Baker v. Gardner, 3 Cir. 1966, 362 F. 2d 864.

4. Mankiewicz v. Celebrezze, D.C., 256 F. Supp. 351.

rate" had he obtained the employment. While he would have been paid the "going rate" there was no evidence as to whether the "going rate" was the Union scale which he had formerly earned or a special rate for handicapped employees. The Court of Appeals was not impressed by his work-record prior to the first hearing. Prior to his second hearing he had no employment. There was considerable testimony from labor leaders that, regardless of possible ability to pick up a job now and then, he cannot compete successfully in the labor market and that he cannot expect to be compensated at his former scale. As he grows older, his prospects will continue to diminish.

■ The Defense Bases Act (42 U.S. C. § 1651 et seq.) incorporates the definition of "disability" of the Longshoremen's and Harbor Workers' Compensation Act, as set forth in 33 U.S.C. § 902 (10):

"(10) 'Disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment."

The extent of a claimant's disability must be evaluated, under this definition, in an economic sense rather than purely in medical terms.[5] The ability to earn in the open labor market, not the ability to secure exceptional consideration from a sympathetic employer, is the test under this definition.[6]

■ This is not to imply that petitioner lacks a physical or medical basis for claiming that he is disabled. That petitioner is severely handicapped cannot be denied. But essentially, the Act is oriented toward making an economic evaluation of the effect of a physical disability. I find that petitioner is, on the present record, permanently and totally disabled within the meaning and humanitarian intent of the Act.

On the matter of attorney's fees, petitioner's counsel argues that, considering back payments required to be brought up to date and future payments over petitioner's life expectancy, a compensation order in favor of petitioner will cause him ultimately to be paid approximately $67,000; that, applying by analogy the fee provisions of the Louisiana Workmen's Compensation Law (20 percent of the first $5,000 recovered and 10 percent of any additional recovery), a fee of $7,200 would be called for. A number of comparatively large fees awarded in penalty situations by Louisiana courts are cited, including a $2,500 fee where there had not even been a trial on the merits, only a hearing and appeal on an exception.[7] Maximum recovery under the Louisiana Act involves only a fraction of the recovery involved here; some of the recent fee awards approximate 20 percent of anticipated maximum recovery.

■ While on this Court's bench, Judge Ainsworth awarded a $3,000 attorney's fee in McCormick ex rel. Kierr & Gainsburgh v. Donovan, 247 F.Supp. 175, a Longshoremen's case where approximately $6,000 in compensation had accrued to date. The instant case has been an unusually protracted and difficult piece of litigation. It has lasted almost seven years and has involved two hearings before the Deputy Commissioner, two appeals to this Court, two proceedings in the Alexandria Division of the Western District of Louisiana, an appeal to the Fifth Circuit Court of Appeals and may yet involve another appeal to that Court. In view of these factors, I believe an attorney's fee of $6,500 should be authorized.

I therefore find: That petitioner is presently incapable of earning the wages which he was receiving at the time of his injury on December 20, 1953; that such incapacity results from such injury and will be total and permanent; that the

5. John W. McGrath Corp. v. Hughes, 2 Cir. 1961, 289 F.2d 403.

6. United Engineering Co. v. Pillsbury, D.C., 92 F.Supp. 898.

7. Plaisance v. Collins Industries, Inc., La. App., 1967, 193 So.2d 816.

value of the services rendered by petitioner's counsel to date is $6,500; that the compensation order rendered herein by the Deputy Commissioner on June 20, 1966, is unsupported by substantial evidence and contrary to applicable law and that petitioner is entitled to compensation benefits, at the rate of $35 per week, from December 20, 1953, subject to a credit of $11,000, during his disability.

It is therefore ordered, adjudged and decreed that the compensation order rendered herein by the Deputy Commissioner on June 20, 1966, be, and it is hereby reversed, annulled, rescinded and set aside: that this cause be remanded to the Deputy Commissioner and that he is hereby directed to make a compensation order providing for the payment of $35 per week to petitioner, from December 20, 1953, subject to a credit of $11,000, and for an attorney's fee of $6,500.