580 S.E.2d 100

**Alfred Lee WIGFALL, Employee, Claimant, Appellant,**

v.

**TIDELAND UTILITIES, INC., Employer, and Northern Insurance Company of New York, Respondents.**

No. 25628.

Supreme Court of South Carolina.

Heard Dec. 5, 2002.

Decided April 14, 2003.

Rehearing Denied May 15, 2003.

David T. Pearlman and James K. Holmes, both of The Steinberg Law Firm, LLP, of Charleston; for Appellant.

C. Jo Anne Wessinger and Steven W. Hamm, both of Richardson, Plowden, Carpenter & Robinson, PA, of Columbia; for Respondents.

Justice BURNETT.

Alfred Lee Wigfall ("Wigfall") appeals the decision of the Workers' Compensation Commission ("Commission") limiting his disability to a scheduled member in lieu of awarding him permanent, total disability. The Court of Appeals transferred Wigfall's direct appeal to this Court because he seeks to overturn *Singleton v. Young Lumber Company*, 236 S.C. 454, 114 S.E.2d 837 (1960). We decline to overturn *Singleton* and affirm the Commission's order.

## FACTS

Wigfall sustained a broken left femur in a work related accident. Commission concluded Wigfall suffered a 90% permanent partial disability to his leg. Wigfall's sole physical injury is to that leg. The single commissioner concluded Wigfall's injury, employment history, age and educational attainment rendered him totally disabled. However, the single commissioner denied Wigfall benefits of total disability, relying on *Singleton, supra.* The single commissioner ordered Wigfall be compensated for a single, scheduled injury

pursuant to S.C.Code Ann. § 42–9–30(15) (1976). The full Commission and circuit court affirmed the Order.

## ISSUES

I. Does the exclusive remedy rule violate the Equal Protection Clause of the Constitution?

II. Does the term "impairment," as used in *Singleton,* include both wage loss and medical considerations?

III. Should *Singleton's* exclusive remedy rule be overruled?

## I

## Equal Protection Clause

■ Initially, Wigfall argues the exclusive remedy rule violates the Equal Protection Clause.[1] Wigfall raised the issue for the first time before the circuit court. The circuit court did not rule on the issue and Wigfall failed to seek consideration of the issue pursuant to Rule 59, SCRCP. Therefore the issue is not preserved for appellate review. *Talley v. South Carolina Higher Educ. Tuition Grants Comm.,* 289 S.C. 483, 347 S.E.2d 99 (1986); *see also Schurlknight v. City of North Charleston,* 345 S.C. 45, 545 S.E.2d 833 (Ct.App.2001) (workers' compensation case).

## II

## "Impairment"

■ Wigfall asserts we should interpret the term "impairment" as used in *Singleton* to include both medical and wage loss considerations. Therefore, Wigfall asserts he would be totally disabled under the *Singleton* standard if he demonstrates his scheduled loss was accompanied by a loss in earning capacity. We disagree.

The *Singleton* Court held:

Where the injury is confined to the scheduled member, and there is no **impairment of any other part of the body because of such injury,** the employee is limited to the scheduled compensation, **even though other considerations**

---

1. U.S. Const. Amend. XIV, § 1.

**such as age, lack of training, or other conditions peculiar to the individual, effect a total or partial industrial incapacity.** To obtain compensation in addition to that scheduled for the injured member, claimant must show that some other part of his body is affected.

*Singleton,* 236 S.C. at 471, 114 S.E.2d at 845 (emphasis added).

The *Singleton* Court did not intend for the additional "impairment" to be a loss of earning capacity, age, lack of training or any other economic factor. The *Singleton* Court intended "impairment" to encompass a physical deficiency. Wigfall's argument is without merit.

## III

### *Singleton*

Two competing models of workers' compensation are of concern in resolving this matter. The first, the economic model, defines disability and incapacity in terms of the claimant's loss of earning capacity as a result of the injury. The second, the medical model, provides awards for disability based upon degrees of medical impairment to specified body parts. *Stephenson v. Rice Serv.'s, Inc.,* 323 S.C. 113, 473 S.E.2d 699 (1996); *Dunmore v. Brooks Veneer Co.,* 248 S.C. 326, 149 S.E.2d 766 (1966) (in cases of scheduled losses the compensation depends on the character of the injury (the medical model), and not the loss of earning capacity (the economic model)); *Jewell v. R.B. Pond Co.,* 198 S.C. 86, 15 S.E.2d 684 (1941) (Act has two purposes: 1) to compensate for loss of injured employee's earning capacity; 2) to indemnify for physical ailments in a class of cases legislatively specified).[2] The two models are distinct in parts of the S.C. Workers' Compensation Act and intertwined in other parts.

---

2. Under the medical model loss of earning capacity is not irrelevant. Instead, the Legislature has statutorily presumed lost earning capacity for certain scheduled injuries even where the employee is still capable of working. *See G.E. Moore Co. v. Walker,* 232 S.C. 320, 102 S.E.2d 106 (1958); 4 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law,* § 86.02 at 86-5 (1999) (in scheduled benefits diminishment of earning capacity is conclusively presumed).

■ South Carolina provides three methods to obtain disability compensation: 1) total disability under S.C.Code Ann. § 42–9–10; 2) partial disability under S.C.Code Ann. § 42–9–20;[3] and 3) scheduled disability under S.C.Code Ann. § 42–9–30. The first two methods are premised on the economic model, in most instances, while the third method conclusively relies upon the medical model with its presumption of lost earning capacity.

## A. S.C.Code Ann. § 42–9–10.

A claimant may obtain total disability in one of three ways under § 42–9–10.

First, a claimant may be presumptively totally disabled. As such, a claimant must show a physical injury enumerated in § 42–9–10.[4] However, because the Legislature has categorized certain types of injuries as *per se* totally disabling, the claimant need not show a loss of earning capacity. The loss of earning capacity is, like a scheduled loss in § 42–9–30, conclusively presumed. Therefore, even in a category in which the earning capacity serves as a benchmark for disability, the Legislature has determined that certain injuries equal a permanent disability without the need to consider earning capacity. *See Larson's Workers' Compensation Law,* § 83.08 at 83–20.

Second, a claimant may establish total disability under § 42–9–10 by showing an injury, which is not a § 42–9–30 scheduled injury, caused sufficient loss of earning capacity to render him totally disabled. An example of such a claim occurred in *Coleman v. Quality Concrete Prod.'s, Inc.,* 245 S.C. 625, 142 S.E.2d 43 (1965), where a claimant experienced a

---

**3.** A claimant may obtain partial permanent disability under S.C.Code Ann. § 42–9–20 (1976). To do so a claimant must show an injury and a loss of earning capacity. *Roper v. Kimbrell's of Greenville, Inc.,* 231 S.C. 453, 99 S.E.2d 52 (1957). Because Wigfall claims he is totally disabled, this statute is not applicable.

**4.** The list of injuries included in the presumptive total disability category include: "[t]he loss of both hands, arms, feet, legs, or vision in both eyes, or any two thereof, constitutes total and permanent disability to be compensated according to the provisions of this section" or that claimant "is a paraplegic, a quadriplegic, or who has suffered physical brain damage . . . ." S.C.Code Ann. § 42–9–10.

double hernia after being injured while at work. The claimant established the double hernia, coupled with a lack of education or adequate job training, made him unable to find comparable, stable employment. The injury, combined with those other factors, diminished his earning capacity to such an extent as to entitle him to total disability.

Third, a claimant may establish total disability through multiple physical injuries. Under this scenario a claimant who has a § 42–9–30 scheduled injury must show an additional injury. *Singleton, supra; see also McCollum v. Singer Co.,* 300 S.C. 103, 386 S.E.2d 471 (Ct.App.1989) (Court found claimant totally disabled due to combined partial impairments to the back, stomach and leg).

In *Singleton,* claimant's recovery was premised on the theory that an injury to a scheduled body part combined with a loss of earning capacity equaled total disability. Neither party disputed that Singleton's lone physical injury was to his leg. However, a physician testified Singleton's injury prevented him from working in the job for which he was trained. This Court disagreed with Singleton's theory finding a claimant with a scheduled loss unaccompanied by any other physical injury was entitled only to the benefits of the scheduled loss in § 42–9–30 and not total disability under § 42–9–10.[5]

*Singleton* stands for the exclusive rule that a claimant with one scheduled injury is limited to the recovery under § 42–9–30 alone. The case also stands for the rule that an individual is not limited to scheduled benefits under § 42–9–30 if he can show additional injuries beyond a lone scheduled injury. This principle recognizes "the common-sense fact that, when two or more scheduled injuries [or a scheduled and non-scheduled injury] occur together, the disabling effect may be far greater than the arithmetical total of the schedule allowances added

---

5. The *Singleton* court did not address whether a person who has multiple physical impairments must also show lost earning capacity to qualify as totally disabled. Dicta in the case seems to suggest that lost earning capacity is irrelevant. The Court of Appeals in *McCollum v. Singer Co., supra,* found claimant totally disabled due to combined partial impairments to the back, stomach and leg because it found that such injuries combined carried a presumption of lost earning capacity. The question whether a claimant with multiple injuries in the *Singleton* context must prove a sufficient lost earning capacity to be deemed totally disabled is an issue raised in this appeal.

together." *Larson's Workers' Compensation Law*, 87.05 at 87–8; *see, e.g., Cunnyngham v. Donovan*, 271 F.Supp. 508 (E.D.La.1967); *Williams v. Industrial Comm'n*, 73 Ariz. 57, 237 P.2d 471 (1951).

## B. S.C.Code Ann. § 42–9–30

A claimant may obtain disability for a scheduled physical injury included in S.C.Code Ann. § 42–9–30 (1976). The claimant is not required to show lost earning capacity because the compensation is based on the character of the injury and lost earning capacity is conclusively presumed. *Fields v. Owens Corning Fiberglas*, 301 S.C. 554, 393 S.E.2d 172 (1990); *Larson's Workers' Compensation Law*, § 86.02 at 86–5 (1999). As discussed previously, under *Singleton* a claimant with a single scheduled injury may only obtain a scheduled recovery.

Wigfall seeks to limit *Singleton* by establishing a fourth way to obtain total disability by allowing a claimant to be totally disabled if he can prove a scheduled injury caused sufficient lost earning capacity. Under this theory Wigfall must show a physical injury within the scheduled injuries of § 42–9–30. He must also show the physical injury has caused him to lose his earning capacity, thereby rendering him totally disabled.

Wigfall asserts developments since *Singleton* buttress his argument. For example, Wigfall points to the *Singleton* court's citation to 2 *Schneider's Workmen's Compensation*, § 2322 at 567 for the proposition that:

> [A] workman sustaining one of the minor injuries for which specific compensation is provided under the statute might, because of such injury, be unable to resume his employment and, because of his lack of education or experience or physical strength or ability, might be unable to obtain other employment, does not entitle him to be classed as totally and permanently disabled.

*Singleton*, 236 S.C. at 470, 114 S.E.2d at 845.

Wigfall asserts the modern trend is contrary to such language. He contends the modern view is "[t]otal disability may be found in the case of workers who, while not altogether incapacitated for work, are so handicapped that they will not be employed regularly in any well-known branch of the labor

market." *Larson's Workers' Compensation Law*, § 83.01 at 83–3.

Wigfall's assertion confuses the majority trend in statutes premised upon the economic model with the majority view in interpreting statutes based on the medical model. That is, according to *Larson*, a majority of states hold that a claimant may be found totally disabled when an unscheduled injury or multiple injuries prevent him from obtaining employment regularly in the labor market. *Larson* also informs us, however, a majority of states continue to follow the rule that an individual with a single scheduled injury is limited to compensation under the scheduled injury statute, even if the person is unable to obtain regular employment as a result of the injury.[6]

South Carolina recognizes that a claimant may be totally disabled even though he is not altogether incapacitated if such

**6.** For those states adhering to the exclusive rule see: *Ratliff v. Alaska Workers' Comp. Bd.*, 721 P.2d 1138 (Alaska 1986); *Hawkeye–Sec. Ins. Co. v. Tupper*, 152 Colo. 12, 380 P.2d 31 (1963); *Wills v. St. Paul Fire & Marine Ins. Co.*, 143 Ga.App. 562, 239 S.E.2d 219 (1977); *Graves v. Eagle Iron Works*, 331 N.W.2d 116 (Iowa 1983); *Duncan v. City of Osage City*, 13 Kan.App.2d 364, 770 P.2d 843 (1989); *Lappinen v. Union Ore Co.*, 224 Minn. 395, 29 N.W.2d 8 (1947); *Nowlin v. Mississippi Chem. Co.*, 219 Miss. 873, 70 So.2d 49 (1954); *Fenster v. Clark Bros. Sanitation*, 235 Neb. 336, 455 N.W.2d 169 (1990); *Padilla v. Concord Plastics, Inc.*, 221 N.J.Super. 301, 534 A.2d 428 (App.Div. 1987); *Hise Constr. v. Candelaria*, 98 N.M. 759, 652 P.2d 1210 (1982); *Raffual v. Oneida Bleachery, Inc.*, 280 A.D. 1007, 116 N.Y.S.2d 760 (1952); *Baldwin v. North Carolina Meml. Hosp.*, 32 N.C.App. 779, 233 S.E.2d 600 (1977); *Clark v. Keller Williams Furniture Mfg.*, 456 P.2d 541 (Okla.1969); *Bethlehem Mines Corp. v. Workmen's Comp.App. Bd.*, 108 Pa.Cmwlth. 317, 529 A.2d 610 (1987); *Coker v. Armco Drainage & Metal Prods. Co.*, 192 Tenn. 10, 236 S.W.2d 980 (1951); *Travelers Ins. Co. v. Boydstun*, 417 S.W.2d 601 (Tex.Civ.App.1967); *Oliver v. State Workmen's Comp. Comm'r*, 152 W.Va. 478, 164 S.E.2d 582 (1968); *Mednicoff v. Department of Indus., Labor & Human Relations*, 54 Wis.2d 7, 194 N.W.2d 670 (1972). For states rejecting the exclusive view see: *Smith v. Capps*, 414 So.2d 102 (Ala.Civ.App.1982); *Langbell v. Industrial Comm'n*, 111 Ariz. 328, 529 P.2d 227 (1974); *Cooper Indus. Prod., Inc. v. Worth*, 256 Ark. 394, 508 S.W.2d 59 (1974); *Henderson v. Sol Walker & Co.*, 138 So.2d 323 (Fla.1962); *General Elec. Co. v. Industr. Comm'n*, 89 Ill.2d 432, 60 Ill.Dec. 629, 433 N.E.2d 671 (1982); *C.E. Pennington Co., Inc. v. Winburn*, 537 S.W.2d 167 (Ky.1976); *Jacks v. Banister Pipelines Am.*, 418 So.2d 524 (La.1982); *Hafer v. Anaconda Aluminum Co.*, 198 Mont. 105, 643 P.2d 1192 (1982); *Gonzales v. Gackle Drilling Co.*, 70 N.M. 131, 371 P.2d 605 (1962); *Hill v. State Accident Ins. Fund*, 38 Or.App. 13, 588 P.2d 1287 (1979).

an injury prevents him from obtaining regular employment in the labor market. *See Coleman v. Quality Concrete Prods., Inc., supra; Colvin v. E.I. Du Pont De Nemours Co.,* 227 S.C. 465, 88 S.E.2d 581 (1955); *McCollum v. Singer Co.,* 300 S.C. 103, 386 S.E.2d 471 (Ct.App.1989). In the context of scheduled injuries, South Carolina recognizes a claimant's entitlement to be deemed disabled and to receive compensation for an injury even though the claimant is able to work. *See Stephenson v. Rice,* 323 S.C. 113, 473 S.E.2d 699 (1996). South Carolina has never recognized that a claimant can suffer a single scheduled injury and as a result become totally, permanently disabled. *See Singleton, supra.* Our decisions are therefore in line with a majority of states.

Wigfall cites to several cases for the proposition that states are turning from the *Singleton* exclusive view. However, the cases are distinguishable from *Singleton* in that they involve claimants with multiple injuries. *See, e.g., Whitley v. Columbia Lumber Manuf. Co.,* 318 N.C. 89, 348 S.E.2d 336 (N.C. 1986) (claimant suffered injury to multiple scheduled members including a right arm and left hand); *Van Dorpel v. Haven–Busch Co.,* 350 Mich. 135, 85 N.W.2d 97 (1957) (claimant suffered loss of four fingers and the partial amputation of a right leg). In such cases *Singleton* would allow an individual to prove total disability.

Admittedly, Wigfall's most alluring argument is the complaint of inequity which results from allowing a claimant to establish total disability through a single non-scheduled injury plus a loss of earning capacity but not allowing a claimant to establish total disability through a single scheduled injury plus a significant loss of earning capacity. The result is an individual with a hernia may obtain total disability by showing lost earning capacity, while an individual with a scheduled injury may not attain total disability even if he could show the scheduled injury caused the claimant to lose his earning capacity.

Wigfall's argument is in line with several jurisdictions which have rejected the exclusive approach in favor of one which allows a claimant who has a scheduled injury to elect total disability if he can prove the injury caused the loss of earning capacity. *See, e.g., Langbell v. Industrial Comm'n,* 111 Ariz.

328, 529 P.2d 227 (1974); *Cooper Indus. Prod., Inc. v. Worth,* 256 Ark. 394, 508 S.W.2d 59 (1974). Such jurisdictions base their decisions on the inequities resulting from the exclusive approach and the liberal construction afforded to workers' compensation statutes.

While we may be inclined to accept Wigfall's equity argument, we decline to do so in the face of the Legislature's mandates concerning our workers' compensation system. Our ruling is based less on concepts of *stare decisis* and more on the acknowledgement that legislative intent is the paramount concern when interpreting a statute.

 The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Charleston County Sch. Dist. v. State Budget and Control Bd.,* 313 S.C. 1, 437 S.E.2d 6 (1993). "What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will." Norman J. Singer, *Sutherland Statutory Construction* § 46.03 at 94 (5th ed.1992). If a statute's language is plain, unambiguous, and conveys a clear meaning "the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Hodges v. Rainey,* 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000).

We are further bound by precedent to strictly construe statutes in derogation of the common law. *Gilfillin v. Gilfillin,* 344 S.C. 407, 544 S.E.2d 829 (2001). Workers' compensation statutes provide an exclusive compensatory system in derogation of common law rights. *See Caughman v. Columbia YMCA,* 212 S.C. 337, 47 S.E.2d 788 (1948). As such, when reading a workers' compensation statute we strictly construe its terms, leaving it to the Legislature to amend and define its ambiguities.

Section 42–9–30 provides:

In cases included in the following schedule, the disability in each case **shall be deemed** to continue for the period specified and **the compensation so paid for such injury shall be as specified** therein, to wit:

. . .

(15) For the loss of a leg, sixty-six and two-thirds percent of the average weekly wages during one hundred ninety-five weeks;

S.C.Code Ann. § 42–9–30 (1976).

The term "shall" in a statute means that the action is mandatory. *Montgomery v. Keziah,* 277 S.C. 84, 282 S.E.2d 853 (1981). A plain reading of the statute is that in cases in which a claimant loses the use of a leg, the disability must continue for one hundred ninety-five weeks and the compensation must equal sixty-six and two-thirds percent of the claimant's average weekly wages. Under such a reading, Wigfall is entitled only to the scheduled benefits because he suffers solely from a scheduled disability.

■ Buttressing a plain reading of the statute is the Legislature's inactivity on the issue over the last forty years since *Singleton.* The Legislature is presumed to be aware of this Court's interpretation of its statutes. *See State v. 192 Coin–Operated Video Game Machines,* 338 S.C. 176, 525 S.E.2d 872 (2000). When the Legislature fails over a forty-year period to alter a statute, its inaction is evidence the Legislature agrees with this Court's interpretation.

Wigfall asserts decisions by both the Michigan Supreme Court and the North Carolina Supreme Court counsel against *Singleton.* Wigfall cites *Van Dorpel v. Haven–Busch Company,* 350 Mich. 135, 85 N.W.2d 97 (1957), for the proposition that we should not be bound by the forty-year inaction of the Legislature in upholding *Singleton.* He cites to the North Carolina Supreme Court's decision in *Whitley v. Columbia Lumber Manuf. Co.,* 318 N.C. 89, 348 S.E.2d 336 (1986), as evidence that Courts should read workers' compensation claims liberally to allow for "full compensation" of injured workers in spite of "specific exclusive remedy statutory language." See *Spoone v. Newsome Chevrolet–Buick,* 309 S.C. 432, 434, 424 S.E.2d 489, 490 (1992)("Because South Carolina adopted large portions of the North Carolina Workers' Compensation legislation, we rely on North Carolina precedent in Workers' Compensation cases."). Wigfall's reliance is misplaced.

Wigfall, in brief and at oral argument, asserted we should not consider legislative inaction to determine legislative intent.

To do so, Wigfall argues, would allow a court to fall prey to "a Rip Van Winkle doctrine of judicial stagnation and inertia." *See Van Dorpel, supra.*

The Michigan Supreme Court in *Van Dorpel* admitted the disability statute it interpreted was "silent on the precise issue involved." *Id.* at 147, 85 N.W.2d 97. Therefore, the Michigan Supreme Court stated that it "37 years ago decided what it thought the correct interpretation should be .... [but now] happen[s] to disagree with that old interpretation and wish[es] to make a new interpretation." *Id.*

The Michigan Supreme Court faced a situation in which it had almost a half-century before interpreted into a statute something which was neither required nor forbidden. Later, with its prior interpretation challenged, the court concluded the passage of time counseled that its previous interpretation was unjust. Because the statute itself did not require such a finding, the court was not compelled to comply with an unworkable precedent. Wigfall's assessment of the case overlooks this critical point: The Michigan Supreme Court was not compelled to rely on legislative inaction as its guide because the precedent to be overturned was not based on legislative action in the first instance.

The Michigan Supreme Court need not be swayed by acquiescence where the Legislature has been silent all along, but this Court must acquiesce where the Legislature has stood silent only after its command was heeded in *Singleton.* Here statutory language commands that where Wigfall sustains a lone scheduled injury he may only recover for that scheduled injury.

In *Whitley,* the North Carolina Supreme Court concerned itself with interpreting the apparently exclusive phrase "in lieu of all other compensation" found in its version of the scheduled injury provision of workers' compensation. *See* N.C. Gen.Stat. § 97–31 (1985) ("In cases included by the following schedule the compensation in each case ... **shall be in lieu of all other compensation, including disfigurement** ...") (emphasis added).

Ultimately, the court concluded the phrase meant that a claimant may either elect to recover under the state's total incapacity statute, N.C. Gen.Stat. § 97–29 (1985), or under its

scheduled loss section. The benefit was the claimant, who could not prove total disability due to lost earning capacity, could receive compensation under § 97–31, where lost earning capacity was presumed. However, if the claimant could prove lost earning capacity was total and permanent, they could elect to receive compensation under § 97–29.

The North Carolina court reached its decision after examining the legislative history of the act relying mainly on the Legislature's actions following *Stanley v. Hyman–Michaels Co.,* 222 N.C. 257, 22 S.E.2d 570 (1942). In *Stanley* the North Carolina Supreme Court ruled a claimant who had multiple scheduled losses may recover under the total disability statute instead of the scheduled loss statute. The *Stanley* court also allowed the claimant double recovery under the statute for disfigurement and loss of a scheduled member. *See id.*

In response, the North Carolina General Assembly amended the scheduled member statute to include the "in lieu" language. *See generally,* J. Cameron Furr, Jr., Note, Whitley v. Columbia Lumber Manufacturing Co.: *Abolishing the Exclusive Remedy Requirement for the Scheduled Injuries Section of the North Carolina Workers' Compensation Act,* 66 N.C. L.Rev. 1365 (1988) (provides case analysis and critique of *Whitley* decision). Instead of making the scheduled loss statute operate as an exclusive remedy to those who had scheduled injuries, the *Whitley* court construed the legislative action as only precluding double recovery. *See Whitley,* 318 N.C. at 97, 348 S.E.2d at 340. The court also found additional legislative acts to strike the time limitations in the total disability statute indicated its intent "to address the plight of a worker who suffers an injury permanently abrogating his earning ability." *Id.* The court thus read those legislative amendments to reveal legislative intent for the claimant to choose the more favorable remedy. *See id.*

With the intent of the legislature to allow greater recovery for claimants whose scheduled injuries caused total disability, the *Whitley* court argued other policy considerations required a finding that the "in lieu" language did not make the scheduled loss statute operate as an exclusive remedy. Chief among those policy considerations was the goal of workers' compensation to compensate claimants for their loss of wage

earning capacity. *See id.* Making the scheduled loss statute an exclusive remedy would not truly compensate claimants for their full loss of earning capacity. However, allowing a claimant with a scheduled injury to receive total and permanent disability status would compensate for such a loss if the individual proved a significant diminishment of earning capacity. *See id.*

Finally, the *Whitley* court relied on principles of statutory construction to hold the "in lieu" language did not provide a claimant with an exclusive remedy under § 97–31. The court, in recognizing the Legislature's intent to compensate claimants whose scheduled injury causes total disability and the policy considerations underlying workers' compensation, professed that to narrowly construe the statute to limit recovery would not be equitable. Further, the court concluded any ambiguity must be resolved in favor of the claimant whom the Legislature intended to be compensated if they could prove their scheduled loss caused total disability through a complete loss of earning capacity. *See id.* at 97, 348 S.E.2d at 340.

"The [North Carolina] supreme court therefore concluded that the intent of the general assembly, the policy considerations, and the inequity of restricting the employee's recovery required that [§ ] 97–31 not function as an exclusive remedy when the employee is totally and permanently disabled." Furr, *supra* at 1368.

Although North Carolina workers' compensation case law retains a special significance in this state, our own Legislature's pronouncements of the law must necessarily prevail. The scheduled benefits section of § 42–9–60 is not similar to the language of § 97–31. The intent of the South Carolina Legislature is clear by its use of mandatory language. Further, the inaction to legislatively amend § 42–9–60 demonstrates the Legislature's intent to allow *Singleton* to remain effective. Contrasted with our Legislature's acquiescence to *Singleton* is the North Carolina Supreme Court's interpretation of its own Legislature's actions demonstrating an intent to move away from the exclusive remedy rule.

Our view of the South Carolina Workers' Compensation Act, in terms of public policy considerations and equity principles, is materially different from the North Carolina Supreme

Court's view of its own statute. Workers' compensation statutes abrogate traditional common law approaches to compensate workers injured on the job. With rare exceptions, workers' compensation displaces tort law with a no-fault system for on-the-job injuries. *But see* S.C.Code Ann. § 42–9–60 (Supp. 2001) (barring an intoxicated employee from receiving workers' compensation).

By displacing traditional tort law the Legislature intended to provide a no-fault system focusing on quick recovery, relatively ascertainable awards and limited litigation. *See Furr, supra* at 1373; *Taylor v. J.P. Stevens and Co.,* 57 N.C.App. 643, 645, 292 S.E.2d 277, 279 (1982), *modified and aff'd,* 307 N.C. 392, 298 S.E.2d 681 (1983) (citing *Barnhardt v. Yellow Cab Co.,* 266 N.C. 419, 423, 146 S.E.2d 479, 484 (1966)). In exchange for these benefits, the parties and society as a whole bear some costs.

One such cost is workers' compensation claims may not be equitable in all situations. *See Potomac Electric Power Co. v. Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor,* 449 U.S. 268, 281, 101 S.Ct. 509, 66 L.Ed.2d 446 (1980) ("Respondents ... argue that the Act should be interpreted in a manner which provides a complete and adequate remedy, to an injured employee. Implicit in this argument, however, is the assumption that the sole purpose of the Act was to provide disabled workers with a complete remedy for their industrial injuries. The inaccuracy of this implicit assumption undercuts the validity of respondents' argument."). "The schedule brings a windfall to the worker in some cases and gross hardship to the worker in others." *Graves v. Eagle Iron Works,* 331 N.W.2d 116, 120 (Iowa 1983).[7]

---

**7.** *See* Emily A. Spieler, *Assessing Fairness in Workers' Compensation Reform: A Commentary on the 1995 West Virginia Workers' Compensation Legislation,* 98 W. Va. L.Rev. 23, 132–33 (1995) (discussing the adequacy of benefits under workers' compensation statutes); Megan Manning Antenucci, Note, *Permanent Partial Disability Under Worker's Compensation: Schedule Exclusivity Versus Impaired Earning Capacity,* 33 Drake L.Rev. 885, 888 (1984). While workers' compensation statutes may have once adequately compensated claimants, the Occupational Safety and Health Act of 1970 noted economic, medical and technological changes raised "serious questions about the fairness and adequacy of present workmen's compensation laws." *See* 29 U.S.C. §§ 651–678 (1994); Richard A. Epstein, *The Historical Origins and*

It is essential to remember that the Legislature created a system, for good or ill, which "serve[s] a social function by providing the injured employee with sufficient income and medical care to keep him from destitution .... [they] are not designed to compensate the employee for his injury, but merely to provide him with the bare minimum of income and medical care to keep him from being a burden to others. Gary A. Scarzafava and Frank Herrera, Jr., *Workplace Safety—The Prophylactic and Compensatory Rights of the Employee*, 13 St. Mary's L.J. 911, 944 (1982) (*quoting* Arthur Larson, *The Nature and Origins of Workmen's Compensation*, 37 Cornell L.Q. 206, 209–10, 213 (1952)). However, such sources of inequities are the province of the Legislature to correct by balancing the interests, risks and rewards of such a large, comprehensive program. This Court may only take such equitable arguments into account where legislative intent and statutory language are not clear.

Our decision does not dispute that the result Wigfall desires may be, in the abstract, the most just result of those in his condition. Nor does it dispute the idea that equity may continue to play a part in this Court's decision-making process. Our decision does maintain the rule that equity cannot prevail over a positive legislative enactment. *Town of Zebulon v. Dawson*, 216 N.C. 520, 5 S.E.2d 535 (1939). As the South Carolina Court of Appeals explained:

There is a sound reason for this principle. An important function of legislation is to consider and to balance the

---

*Economic Structure of Workers' Compensation Law*, 16 Ga. L.Rev. 775, 797–800 (1982); *Report of the National Commission on State Workmen's Compensation Laws* 13 (1972) (The Commission also found that "[e]xcept in a few states, workman's compensation benefits are not adequate[ ]" and "[t]he inescapable conclusion is that State workmen's compensation laws in general are inadequate and inequitable." *Id.* at 53, 119). National Conference of State Legislatures, *The State of Workers' Compensation* 7–9 (1994) (noting that "[p]erhaps the most serious reservation about an impairment system is that it can result in a grave injustice in those limited instances where there is ... catastrophic economic loss suffered by a person which is far out of proportion to the degree of impairment (and, therefore, the compensation)." *Id.* at 7.) Typically injured workers recover a lower percentage of their accident costs than victims of off-the-job accidents. Deborah R. Hensler et al., *Compensation for Accidental Injuries in the United States* 107 fig. 4.8 (1991). Generally, workers' compensation claimants receive only 30% of costs related to their disability. *Id.* at 106 fig. 4.7.

competing interests and equities arising from the conduct of human affairs. Worker's compensation laws are a classic example of this legislative balancing of the equities. When the legislature has struck a balance by enacting a statutory rule, the courts have no prerogative to annul the legislative choice by applying "chancellor's foot" notions of equity in its place. Stated differently, "[I]t is not the province of this Court to perform legislative functions." The function of equity is to supplement the law, not to displace it.

*Spoone v. Newsome Chevrolet Buick,* 306 S.C. 438, 440 412 S.E.2d 434, 434–35 (Ct.App.1991), *affirmed* 309 S.C. 432, 424 S.E.2d 489 (1992) (citations omitted).

We "are not at liberty to extend by construction the meaning implicit in the language found in the Workmen's [sic] Compensation Act in order to provide a more liberal rule of compensation than that which the legislature has seen fit to adopt." *Singleton,* 236 S.C. at 473, 114 S.E.2d at 846 (*citing Rudd v. Fairforest Finishing Co.,* 189 S.C. 188, 200 S.E. 727 (1939)).[8] Therefore, when Wigfall urges us to adhere to other precedent liberally construing the Workers' Compensation Act in order to expand coverage not to limit it, we must refrain. *See Peay v. United States Silica Co.,* 313 S.C. 91, 437 S.E.2d 64 (1993). We may apply such rules of statutory construction when the meaning of the act is ambiguous. We may not, however, read a statute liberally when the legislative enactment is susceptible of only one inference. We cannot read "shall" in § 42–9–30 to mean anything other than an exclusive "must", just as we cannot read 195 weeks in 42–9–30(15) to mean anything other than 195 weeks, no more and no less.

---

**8.** Furthermore, neither *Van Dorpel* nor *Whitley* support Wigfall's central contention that a claimant should be allowed to claim total, permanent disability when they have received a single scheduled injury. The claimant in both cases sustained multiple injuries which, under *Singleton,* would permit him to receive total disability. *Compare Whitley, supra* (claimant suffered injury to multiple scheduled members including a right arm and left hand); and *Van Dorpel, supra* (claimant suffered loss of four fingers and the partial amputation of a right leg); *with Singleton, supra* (claimant had single injury to right leg). Under *Singleton,* a claimant in South Carolina with injuries similar to the ones sustained in *Van Dorpel* and *Whitley* could obtain total, permanent disability.

118

Because the Legislature's intent is clear from the statute's language and the decision by the Legislature not to statutorily overturn *Singleton*, we affirm the rule that where a claimant has only one scheduled injury his recovery is pursuant § 42–9–30.

## CONCLUSION

For the above reasons we AFFIRM the Commission.

TOAL, C.J., MOORE, WALLER and PLEICONES, JJ., concur.