638 S.E.2d 66

Kenneth W. SANDERS, Respondent,

v.

MEADWESTVACO CORPORATION, Self–
Insured Employer, Appellant.

No. 4157.

Court of Appeals of South Carolina.

Heard June 14, 2006.

Decided Oct. 2, 2006.

Rehearing Denied Dec. 20, 2006.

Kirsten Leslie Barr, of Mt. Pleasant, for Appellant.

Ben C. Harrison, of Spartanburg, for Respondent.

CURETON, A.J.:

In this workers' compensation action, MeadWestvaco Corporation (Westvaco) appeals the circuit court's order affirming the Appellate Panel of the Workers' Compensation Commission (Appellate Panel) awarding Kenneth Sanders (Sanders) a 40% permanent partial disability to his lumbar spine and sacroiliac joint (SI joint). Westvaco also appeals the circuit court's failure to find it was entitled to credit for overpayment

of temporary total disability from the date Sanders reached maximum medical improvement. We affirm in part, reverse in part, and remand.

## FACTS

Sanders, a chip mill operator employed by Westvaco, was injured on March 16, 2001, when a front-end loader flung a piece of wood that struck Sanders in his knee. Sanders was taken immediately to the emergency room where he was treated for the injury.

Several months later Sanders began to complain about lower back pain that radiated into his right hip and buttock region. On August 27, 2001, Dr. Phillip Milner noted that Sanders was having a "palpable snap" of the right SI joint, occurring repetitively when he turned his leg or lifted his leg, which he described as a "very consistent and a noticeable finding." After an MRI scan showed a herniated disc at L4/5 with right L5 root involvement, Dr. Milner referred Sanders to Dr. Charles Hughes for an epidural injection.

Dr. Hughes attempted to treat Sanders' herniated disc with several epidural steroid injections, followed by a right SI joint block injection procedure. He believed, as did Dr. Jacquelyn Van Dam, who was consulted to perform an EMG study, that the herniated disc was not a reasonable source of Sanders' back pain and that surgery would not benefit him. When conservative treatment failed to make a notable difference, Dr. Hughes referred Sanders to Dr. William Felmly at the Moore Orthopedic Clinic for another surgical opinion.

After meeting with Sanders on a single occasion, Dr. Felmly concluded Sanders had a chronic SI joint problem but surgery was not warranted. Dr. Felmly opined Sanders had a 2% permanent partial impairment of the SI joint. After reviewing Dr. Felmly's report, Dr. Hughes found Sanders had reached maximum medical improvement (MMI) and had a 12% impairment of the SI joint and a whole person impairment of 2%. Further, Dr. Hughes believed, as did Dr. Felmly, that Sanders was limited by his own subjective complaints.

Sanders then saw Dr. Samuel Seastrunk. After an independent medical evaluation of Sanders, Dr. Seastrunk stated Sanders had: (1) an L4/5 disc herniation with significant

involvement of the L5 nerve root and radiculitis, and (2) a complex problem with SI instability. Dr. Seastrunk, in sharp contrast with previous doctors, rated the impairment of the lumbar spine at 18%, and an impairment of 22% to the whole person.

On September 26, 2002, Westvaco filed a Form 21 Hearing Request seeking to stop payment of temporary total disability benefits. Moreover, Westvaco sought a credit for any over-payment beyond Sanders' date of MMI, which both parties stipulated occurred on August 21, 2002. Also, Westvaco questioned the compensability of Sanders' claim of anxiety and depression as well as the extent of his disability. Sanders contended he was permanently and totally disabled and sought additional medical care.

After a hearing, the single commissioner concluded Sanders did not meet his burden of proving his depression and anxiety were causally related to his work-related injury. The single commissioner also found that Sanders had a 13% loss of use of his right leg due to the accident. Further, the single commissioner found:

> After considering the opinion of Dr. Seastrunk and his impairment rating of 22%, and after considering the opinions of Dr. Hughes, Dr. VanDam, and Dr. Felmly suggesting that the Claimant's subjective complaints are out of proportion with his objective physical findings ... and after considering the opinions [of all of the doctors] indicating that the Claimant did not need surgery or other invasive treatment as a result of the March 16, 2001 accident; and notwithstanding the Dr. Hughes's and Dr. Felmly's opinion that Claimant sustained only a 2% impairment, I find that the Claimant is credible and has a 40% loss of use of his lumbar spine and SI Joint as a result of chronic pain and a potential need for surgery to these areas.

Accordingly, the single commissioner found Sanders was entitled to future medical treatment "for medication, pain management, his TENS unit, and SI belt" to lessen his period of disability. The single commissioner granted Westvaco's request to terminate temporary total disability compensation but found Westvaco was only entitled to a credit for overpayment

for the period after January 16, 2003, which was the day before the hearing.

The Appellate Panel affirmed the single commissioner, adopting the single commissioner's findings in full. Following a hearing on the matter, the circuit court affirmed the decision of the Appellate Panel, finding the decision was supported by substantial evidence in the record and that Sanders' testimony alone provided substantial evidence to support the finding that he had 40% loss of use of his back. This appeal followed.

## STANDARD OF REVIEW

The Administrative Procedures Act establishes the standard of review for decisions by the Appellate Panel. *Lark v. Bi–Lo, Inc.,* 276 S.C. 130, 134–35, 276 S.E.2d 304, 306 (1981). In workers' compensation cases, the Appellate Panel is the ultimate fact finder. *Shealy v. Aiken County,* 341 S.C. 448, 455, 535 S.E.2d 438, 442 (2000). The Appellate Panel is specifically reserved the task of assessing the credibility of the witnesses and the weight to be accorded evidence. *Id.*

On appeal from the Appellate Panel, this court may reverse or modify a decision if the findings or conclusions of the Appellate Panel are "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record." S.C.Code Ann. § 1–23–380(A)(6)(e) (2005). This court cannot substitute its judgment for that of the Appellate Panel as to the weight of the evidence on questions of fact. *Shealy,* 341 S.C. at 455, 535 S.E.2d at 442. A finding is supported by substantial evidence "unless there is no reasonable probability that the facts could be as related by a witness upon whose testimony the finding was based." *Lark,* 276 S.C. at 136, 276 S.E.2d at 307.

## LAW/ANALYSIS

### I. Section 42–9–30 Analysis

On appeal, Westvaco first argues that section 42–9–30 of the South Carolina Code (1985) permits disability awards based on degrees of medical impairment to specified body parts, and the circuit court erred in affirming an award of benefits based upon impairment to functional units of the

back, i.e., the lumbar spine and SI joint which are not scheduled for compensation under section 42–9–30. We disagree.

The Appellate Panel concluded Sanders was entitled to compensation under section 42–9–30(19) for "permanent loss of use of the lumbar spine and SI joint." Section 42–9–30(19) provides for compensation for injury to the back as follows:

> For the total loss of use of the back, sixty-six and two-thirds percent of the average weekly wages during three hundred weeks. The compensation for partial loss of use of the back shall be such proportions of the periods of payment herein provided for total loss as such partial loss bear to total loss
>
> . . . .

In affirming the Appellate Panel, the circuit court interpreted the Appellate Panel's order to have awarded benefits based on injuries to the back. The circuit court concluded "[a] review of the record reflects that these injuries and disabilities were clearly to the back." Westvaco's argument that because the Appellate Panel's order was too specific in identifying the regions of the back where Sanders' loss of use occurred and that these regions are somehow separate from the back itself is without merit.

Accordingly, even though the SI joint and lumbar spine are not specifically mentioned in section 42–9–30, we find no reversible error in the manner in which the Appellate Panel characterized Sanders' injuries.[1] A review of the Appellate Panel's order and the record reflects Sanders' injury and subsequent disability was clearly to his back. This approach is consistent with our policy of liberally construing the Workers' Compensation Act in favor of coverage. *Schulknight v. City of N. Charleston*, 352 S.C. 175, 178, 574 S.E.2d 194, 195 (2002); *see also Mgmt. Recruiters v. R.J.R. Mech., Inc.*, 304 S.C. 399, 401, 404 S.E.2d 908, 909 (Ct.App.1991) (finding when construing a judgment, the determinative factor is the "intent

---

1. We note the Appellate Panel's finding of impairment to the lumbar spine and SI Joint is premised on Dr. Seastrunk's impairment rating of 22% to the back which can be equated to the whole person. At oral argument, both Sanders and Westvaco agreed the whole person and the whole back are equivalent in terms of disability under the AMA Guidelines. Stated differently, both agreed that impairment to the whole back is equal to impairment of the whole person.

of the officer who wrote it, as gathered not from an isolated part of the judgment, but from all parts thereof").

## II.  Impairment Rating

Next, Westvaco argues the evidence was insufficient to establish Sanders suffered a 40% loss of use of his back. Westvaco's contentions are twofold: (1) the medical testimony established, at most, a 22% impairment rating; and (2) the circuit court erred in affirming an award based upon the potential need for future surgery.

### A.  Evidence of Impairment

■ Westvaco argues Sanders is not entitled to benefits because the evidence was insufficient to establish he suffered a 40% loss of use of his back.  Westvaco contends only the opinion of medical experts can be used to assess Sanders' impairment.  We disagree.

Westvaco argues that since Sanders was awarded disability under § 42–9–30, *Wigfall v. Tideland Util., Inc.*, 354 S.C. 100, 580 S.E.2d 100 (2003), should be controlling regarding the impairment rating.  After reviewing the *Wigfall* court's decision, we agree that this case falls within the *Wigfall* medical model encompassed in § 42–9–30.  354 S.C. at 107, 580 S.E.2d at 103.  We do not agree that a determination of impairment under this section mandates that only medical evidence may be considered by the Commission in determining the degree of disability.

■ While an impairment rating may not rest on "surmise, speculation or conjecture ... it is not necessary that the percentage of disability or loss of use be shown with mathematical exactness."  *Roper v. Kimbrell's of Greenville,* 231 S.C. 453, 461, 99 S.E.2d 52, 57 (1957) (citations omitted); *see also Linen v. Ruscon Constr. Co.,* 286 S.C. 67, 68–69, 332 S.E.2d 211, 212 (1985) (finding that although expert testimony found claimant suffered from a 20–30% impairment to his back, testimony of vocational expert and claimant provided substantial evidence to affirm Appellate Panel's decision finding claimant's impairment exceeded 50%); *Lyles v. Quantum Chem. Co.,* 315 S.C. 440, 445–46, 434 S.E.2d 292, 294–95 (Ct.App.1993) (finding, pursuant to section 42–9–30, that while expert testimony suggested claimant suffered only a 35% impairment to his back, testimony of claimant and others

provided substantial evidence that claimant's impairment exceeded 50%).

▮▮ Further, the Appellate Panel is not bound by the opinion of medical experts and "may find a degree of disability different from that suggested by expert testimony." *Lyles*, 315 at 445, 434 S.E.2d at 295 (citations omitted). Expert medical testimony is merely intended to aid the Appellate Panel in coming to the correct conclusion. *Corbin v. Kohler Co.*, 351 S.C. 613, 624, 571 S.E.2d 92, 98 (Ct.App.2002) (citing *Tiller v. Nat'l Health Care Ctr.*, 334 S.C. 333, 513 S.E.2d 843 (1999)). "Unless the question of the extent of partial loss of use under [section] 42–9–30 is so technically complicated as to require exclusively expert testimony, lay testimony is admissible." *Linen*, 286 S.C. at 68, 332 S.E.2d at 212.

Although Dr. Seastrunk found Sanders' impairment was at 22% to the whole person, Sanders testified at length to the character and extent of his back injury and the restrictions the injury has placed on his physical activities. Sanders testified he has pain in the lower back shooting down into his right buttock and into his leg stopping just above his knee. He utilizes a TENS unit for pain as well as a sacroiliac belt that he wears daily. He has trouble sitting because he must constantly change positions to keep weight off his right buttock. He takes pain medication in order to walk normally. His pain affects his sleeping, allowing him to sleep only five hours a night. He can no longer walk up the steps in the front of his house and now must enter through the back. Sanders testified he used to play tennis three times a week and enjoyed fishing, hunting, and horseback riding. He even built his own home. He testified since his work-related accident, he is no longer an active person and cannot even tie his own shoes.

Although some of the medical evidence may suggest Sanders is not impaired by his back injury, "it is not for this court to balance objective against subjective findings of medical witnesses, or to weigh the testimony of one witness against that of another." *Roper*, 231 S.C. at 461, 99 S.E.2d at 57. That function belongs to the Appellate Panel alone. *Id.* Further, the Appellate Panel correctly considered both medical and lay testimony in arriving at its decision. *See Linen*, 286 S.C. at 68, 332 S.E.2d at 212.

A review of the Appellate Panel's order reveals it considered, in detail, all expert and lay testimony before making its ruling. Important to the Appellate Panel's decision was Sanders' testimony, which the Appellate Panel found credible. Accordingly, the circuit court did not err in affirming the Appellate Panel's consideration of both lay and medical testimony in arriving at its decision.

## B. Award Based on Potential Need for Surgery

█ Although we agree with Sanders that the Appellate Panel may utilize lay testimony to reach an impairment rating higher than that testified to by the medical experts, we find that the Appellate Panel erred as a matter of law in basing its award of a 40% impairment of the back on a potential need for surgery.

█ As we stated in *Bass v. Kenco Group*, 366 S.C. 450, 467, 622 S.E.2d 577, 585 (Ct.App.2005), "[m]aximum medical improvement is a term used to indicate that a person has reached such a plateau that in the physician's opinion there is no further medical care or treatment which will lessen the degree of impairment." (citations omitted). However, the fact that a claimant has reached MMI does not necessarily preclude a finding that additional medical treatment may be needed if the medical treatment would tend to improve the claimant's quality of life but not further improve the medical condition. *See Pearson v. JPS Converter & Indus. Corp.*, 327 S.C. 393, 398, 489 S.E.2d 219, 221 (Ct.App.1997) (citing *O'Banner v. Westinghouse Elec. Corp.*, 319 S.C. 24, 459 S.E.2d 324 (Ct.App.1995) ("Continued treatment of prescriptive medicine did not preclude a finding of maximum medical improvement, because the medication could temporarily alleviate claimant's symptoms but not further improve his medical condition.")).

In the instant case, the parties stipulated Sanders reached MMI on August 21, 2002, and as such was entitled to future medical care that would tend to alleviate his symptoms but not further improve his medical condition. Moreover, Westvaco has not appealed the Appellate Panel awarding Sanders future treatment for pain as future medical care. However, the Appellate Panel incorrectly premised its award of 40% loss of use of the back on a potential need for surgery. Sanders has not pointed to any case law, statute or regulation that would

allow the Appellate Panel to base an impairment rating under section 42–9–30 upon a potential need for surgery, where no evidence suggests that the surgery would be needed to alleviate Sanders' symptoms as opposed to further improving his medical condition. Accordingly, we reverse and remand to the Appellate Panel to determine how much of its award was based upon its conclusion that Sanders may need surgery in the future and to recalculate, if appropriate, Sanders' degree of impairment.

### III. Overpayment of Temporary Total Benefits

Westvaco argues the Appellate Panel erred in limiting its credit for overpayment to the period commencing the day preceding the hearing before the single commissioner. We agree.

Credit for overpayment of temporary total benefits is governed by section 42–9–210 (1985) of the South Carolina Code:

Any payments made by an employer to an injured employee during the period of his disability, or to his dependents, which by the terms of this Title were not due and payable when made may, subject to the approval of the Commission, be deducted from the amount to be paid as compensation; *provided,* that in the case of disability such deductions shall be made by shortening the period during which compensation must be paid and not by reducing the amount of the weekly payment.

In the case of *Hendricks v. Pickens County,* 335 S.C. 405, 414, 517 S.E.2d 698, 703 (Ct.App.1999), we held that "[o]nce the [Appellate Panel] affirmed that (employee) had reached MMI, it was then appropriate to terminate TTD benefits in favor of either permanent partial or permanent total disability benefits, if warranted by substantial evidence in the record." (citations omitted). *See also Smith v. S.C. Dept. of Mental Health,* 335 S.C. 396, 399, 517 S.E.2d 694, 696 (1999) ("The rationale for ceasing temporary benefits upon a finding of MMI is to permit entry of a permanent award. Clearly, if an employee has reached MMI and remains disabled, then his injury is permanent ... This is precisely the reason to terminate temporary benefits in favor of permanent benefits upon a finding of MMI.").

It is undisputed MMI was reached on August 21, 2002, and the hearing before the single commissioner was on January

16, 2003. The Appellate Panel found that due to the fact the hearing was rescheduled "several times," Westvaco was only entitled to credit for overpayments for the period after January 16, 2003. The Respondent admitted at oral argument that the hearing had been rescheduled twice, once at the request of the employer, and once at the request of Sanders. Under section 42–9–260, Westvaco was entitled to have its request to terminate temporary total benefits heard within 60 days of filing the request. Here, the delay in having a timely hearing falls squarely on both parties. Thus, we find no substantial evidence supporting the Appellate Panel's decision to overpay benefits to Sanders. Therefore, we remand this issue to the Appellate Panel for a determination as to the appropriate date for crediting Westvaco with overpayments.

## CONCLUSION

The decision of the circuit court affirming the Appellate Panel is reversed and this case is remanded to the Appellate Panel for a determination of the degree of impairment Sanders suffered to his back as a result of his injury on March 16, 2001. We also remand for a determination of the appropriate period Westvaco should receive credit for the overpayment of temporary total benefits.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

HEARN, C.J., and GOOLSBY, J., concur.