672 S.E.2d 809

**Sandra BARTLEY, Claimant, Appellant,**

v.

**ALLENDALE COUNTY SCHOOL DISTRICT, Employer, and S.C. School Boards Insurance Trust, Carrier, Respondents.**

**No. 4476.**

Court of Appeals of South Carolina.

Heard Oct. 22, 2008.

Decided Jan. 8, 2009.

Rehearing Denied Feb. 25, 2009.

---

Jonathan R. Hendrix, of Lexington, for Appellant.

Kirsten L. Barr, of Mount Pleasant, for Respondents.

KONDUROS, J.:

In this worker's compensation action, Sandra Bartley[1] appeals the Appellate Panels failure to find her totally and permanently disabled, arguing it failed to consider the combined effects of a workplace injury and a pre-existing problem. We affirm.

## FACTS

On September 26, 2002, Bartley was employed as a teacher at Fairfax Elementary School for the Allendale County School District (the District). During recess, a fifth-grade student with cerebral palsy ran towards Bartley to give her a hug.

---

1. Bartley's son accompanied her to oral arguments. Judge Williams believed he recognized the young man, who identified himself as a member of the South Carolina Judicial Department's information technology unit. Neither counsel for the case *sub judice* objected to this panel hearing the matter.

The student inadvertently knocked Bartley down onto some tree roots and fell on top of her. Bartley did not go to an emergency room for treatment but had cervical fusion surgery on May 14, 2003. On July 18, 2003, Bartley filed a Form 50, alleging injuries from the incident (the Allendale incident) to the right shoulder, neck, right arm and hand, left knee, and migraine headaches.

On July 24, 2003, her treating physician, Dr. Scott Strohmeyer, noted that Bartley was doing great, her neck was great, and she was in no pain. Because Bartley's husband had lost his job in Allendale, they moved to Columbia to live with his parents. Bartley was feeling better and in August 2003 she began teaching special education in Richland County at Richland One. She completed a medical questionnaire indicating she did not have a problem with arthritis, back pain, joint pain, or any other chronic illness. While working at Richland One, she began having new symptoms after lifting heavy books and working long hours. In October 2003, at Richland One, a student lifted a desk and threatened to throw it at her. The incident (the Richland incident) made Bartley feel fearful again and brought back the memories of being physically hurt. On July 8, 2004, Dr. Strohmeyer noted "she did very well from [the cervical fusion] and then she went back to teaching school and had another incident with a student and, since that time, she has had a lot of neck pain, right-sided arm pain, lower back pain and pain down her leg." In September 2004, Bartley had fusion surgery in her lower back as a result of a large facet cyst. On December 10, 2004, Bartley filed another Form 50, alleging injuries to the buttocks, right leg, dizziness, ringing in the ears, and psychological overlay.

On August 8, 2005, the single commissioner conducted a hearing. At the hearing, Bartley testified that about a week after the accident, she noticed she could not raise her right arm to write on the blackboard. As time progressed, she could not get out of bed without assistance. She further testified she had children at school carry her books for her, had trouble walking, and stopped exercising.

However, Bartley testified that following the cervical fusion, she started doing better; her headaches and ringing in her ear were better and she regained the range of motion in her

right arm. She also testified she "had initially done well [after the surgery] but after doing a lot of the lifting and everything the pain had began...." Further, Bartley indicated she did not feel fearful after her cervical fusion but the Richland incident "made [her] feel fearful again." Additionally, she discussed her lower back fusion but explained "I don't think my low back problem is related to [the Allendale incident]."

At the time of the hearing, Bartley asserted she was having problems with her neck hurting, back pain, lack of strength in her right arm, loss of balance, and dizziness. She also testified she was having problems with her memory; she would pay bills more than once, get lost while driving, or forget to take her medicine.

The District presented evidence, including Bartley's own testimony, she had problems with depression dating back to 1987. In March of 2001, she visited a doctor because she had nausea and dizziness and blacked out. At the visit, she said she had three other episodes when she was nauseated and almost blacked out. Additionally, in January of 2002, she informed her doctor her migraines had gotten worse. In February 2002, it was noted on her patient chart she "suffers from fibromyalgia and also depression and migraine headaches. She comes in with multiple complaints.... She has an increase in her migraines. She states that she used to get a couple a year and over the last four to five weeks she has had several." She also complained of ringing in her ears at that doctor's visit, which the doctor believed was likely Eustachian tube dysfunction. The chart also contained a notation that Bartley appeared to be more depressed. Dr. Mark Lencke believed a congenital Chiari–1 malformation at the base of her skull might be causing her neck pain and depression as well as chronic headaches. Bartley also testified at the hearing she previously was in abusive marriage and had been abused as a child. Additionally, she testified she had been taking Adderall beginning in 1999 after telling her doctor she had "always been disorganized and unfocused."

The District also presented a letter from Dr. Strohmeyer, dated January 27, 2005, in which he responded to the question: "[I]is the condition of lumbar stenosis related to the accident that happened in October 2003 at the patient's employment[?]"

He answered, "That is difficult to assess. She had a facet disk that has caused severe stenosis. These can be trauma related or just from degenerative changes. It is very difficult to rule out trauma as being a contributing problem to that condition."

Bartley presented opinions of doctors and a physical therapist that she suffers from post-traumatic stress. Additionally, at his deposition, Dr. Strohmeyer explained Bartley was still having problems related to the Allendale incident or the cervical fusion. Dr. Strohmeyer stated he did not think she could handle the physical demands of being a special needs school teacher. He also agreed Bartley was probably disabled from working full time and thought that was due to the Allendale incident.

The single commissioner found Bartley suffered an injury to her neck arising in and out of the course of employment on September 26, 2002. Accordingly, the commissioner determined Bartley had suffered a thirty percent permanent loss of use of her back. The commissioner gave the physical therapist's opinion that Bartley suffered from post-traumatic stress disorder no weight because she was not a medical doctor or psychiatrist. The commissioner further noted Dr. Drummond discussed post-traumatic stress disorder but did not link it to the Allendale incident. The commissioner further found Bartley was not disabled as a result of the injury because she began work with Richland One in August 2003, and thus, was not entitled to temporary total disability. Additionally, the commissioner determined she "failed to carry the burden of proof by competent medical evidence that she suffered an injury to any body part other than her neck or that her psychological condition has worsened as a result of this injury." The commissioner also found Bartley did not file claims for benefits for the buttocks, low back, right leg, dizziness, ringing in the ears, or psychological disorder within two years of the date of injury, and thus, those claims were barred by the statute of limitations.

Bartley appealed to the Appellate Panel arguing the commissioner erred in ruling a substantial portion of her claims were barred by the statute of limitations. Bartley also asserted the commissioner erred in failing to find her permanently and totally disabled or that she had sustained a much greater

degree of disability in failing to award temporary-total benefits. She further contended the commissioner erred in failing to award her additional medical benefits including past and future medical expenses. Following a hearing, the Appellate Panel affirmed the single commissioner finding Bartley had suffered a thirty percent permanent loss of her back from the incident but determined the claims for the buttocks, low back, right leg, dizziness, ringing in the ears, and psychological disorders were not barred by the statute of limitations. However, the Appellate Panel determined those problems were not caused by the Allendale incident.

Bartley appealed to the circuit court, which affirmed the Appellate Panel's decision. The circuit court found the Appellate Panel properly considered Bartley's pre-existing conditions and determined they were not caused or aggravated by the Allendale incident. This appeal followed.

## STANDARD OF REVIEW

■ The South Carolina Administrative Procedures Act (APA) establishes the standard for judicial review of decisions by the Appellate Panel. *See Lark v. Bi–Lo, Inc.,* 276 S.C. 130, 134–35, 276 S.E.2d 304, 306 (1981). This court may not substitute its judgment for that of the Appellate Panel as to the weight of the evidence on questions of fact, but may reverse when the decision is affected by an error of law. *Stone v. Traylor Bros.,* 360 S.C. 271, 274, 600 S.E.2d 551, 552 (Ct.App.2004).

■ The substantial evidence rule governs the standard of review in workers compensation decisions. *Frame v. Resort Servs. Inc.,* 357 S.C. 520, 527, 593 S.E.2d 491, 494 (Ct.App.2004). The Appellate Panels decision must be affirmed if supported by substantial evidence in the record. *Shuler v. Gregory Elec.,* 366 S.C. 435, 440, 622 S.E.2d 569, 571 (Ct.App.2005). An appellate court can reverse or modify the Appellate Panel's decision only if the decision is affected by an error of law or is "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record." *Liberty Mut. Ins. Co. v. S.C. Second Injury Fund,* 363 S.C. 612, 619, 611 S.E.2d 297, 300 (Ct.App.2005).

"Substantial evidence" is not a mere scintilla of evidence nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached or must have reached in order to justify its action.

*Lark,* 276 S.C. at 135, 276 S.E.2d at 306.

"[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Palmetto Alliance, Inc. v. S.C. Pub. Serv. Comm'n,* 282 S.C. 430, 432, 319 S.E.2d 695, 696 (1984). In workers' compensation cases, the Appellate Panel is the ultimate finder of fact. *Shealy v. Aiken County,* 341 S.C. 448, 455, 535 S.E.2d 438, 442 (2000). When the evidence is conflicting over a factual issue, the findings of the Appellate Panel are conclusive. *Hargrove v. Titan Textile Co.,* 360 S.C. 276, 290, 599 S.E.2d 604, 611 (Ct.App.2004). The final determination of witness credibility and weight of the evidence is reserved for the Appellate Panel. *Bass v. Kenco Group,* 366 S.C. 450, 458, 622 S.E.2d 577, 581 (Ct.App.2005).

## LAW/ANALYSIS

Bartley argues the single commissioner, Appellate Panel, and circuit court all erred in failing to consider the combined effects of a workplace injury and preexisting physical and/or emotional and mental problems. Specifically, Bartley maintains the Appellate Panel erred in relying on this court's decision in *Ellison v. Frigidaire Home Products,* 360 S.C. 236, 600 S.E.2d 120 (Ct.App.2004) (*Ellison I*), which the supreme court reversed, 371 S.C. 159, 638 S.E.2d 664 (2006) (*Ellison II*). Further, Bartley contends because substantial, reliable, competent, and probative evidence in the record as a whole supports that she is totally disabled and her psychological and physical problems affect more than just her back and hinder her employment, she must be awarded additional benefits. We disagree.

For an injury to be compensable, it must arise out of and in the course of employment. S.C.Code Ann. § 42-1-160(A) (Supp.2007). An injury arises out of employment if a

causal relationship between the conditions under which the work is to be performed and the resulting injury is apparent to the rational mind, upon consideration of all the circumstances. *Rodney v. Michelin Tire Corp.*, 320 S.C. 515, 518, 466 S.E.2d 357, 358 (1996). "The claimant has the burden of proving facts that will bring the injury within the workers' compensation law, and such award must not be based on surmise, conjecture or speculation." *Clade v. Champion Labs.*, 330 S.C. 8, 11, 496 S.E.2d 856, 857 (1998).

Under section 42–9–10 of the South Carolina Code (Supp. 2007), a claimant has three ways to obtain total disability. First, a claimant can be presumptively disabled.

> The list of injuries included in the presumptive total disability category include: "[t]he loss of both hands, arms, feet, legs, or vision in both eyes, or any two thereof, constitutes total and permanent disability to be compensated according to the provisions of this section" or that claimant "is a paraplegic, a quadriplegic, or who has suffered physical brain damage. . . ."

*Wigfall v. Tideland Utils., Inc.*, 354 S.C. 100, 105 n. 4, 580 S.E.2d 100, 102 n. 4 (2003) (quoting § 42–9–10) (alteration and omission by court). For these injuries, a claimant need not show a loss of earning capacity because the loss is conclusively presumed. *Id.* at 105, 580 S.E.2d at 102. Second, a claimant can show an injury that is not a scheduled injury under section 42–9–30 of the South Carolina Code (Supp.2007) "caused sufficient loss of earning capacity to render him totally disabled." *Wigfall*, 354 S.C. at 105, 580 S.E.2d at 102. "Third, a claimant may establish total disability through multiple physical injuries." *Id.* at 106, 580 S.E.2d at 103.

When a mental injury is induced by physical injury, unlike a purely mental injury, it is not necessary that it result from unusual or extraordinary conditions of employment. *Bass v. Kenco Group*, 366 S.C. 450, 464–65, 622 S.E.2d 577, 584 (Ct.App.2005). Additionally, "[a]ggravation of pre-existing psychiatric problems is compensable if that aggravation is caused by a work-related physical injury." *Anderson v. Baptist Med. Ctr.*, 343 S.C. 487, 493, 541 S.E.2d 526, 528 (2001). Pre-existing depression does not preclude workers' compensation benefits for a mental injury. *See Doe v. S.C.*

*Dep't of Disabilities & Special Needs,* 377 S.C. 346, 351, 660 S.E.2d 260, 263 (2008). However, the right of a claimant to compensation for aggravation of a pre-existing condition arises only when the claimant has a dormant condition that has produced no disability but becomes disabling because of the aggravating injury. *Anderson,* 343 S.C. at 493, 541 S.E.2d at 528.

> The language of [section] 42–9–400(a) and (d) indicates the legislature clearly envisioned that a claimant may recover for greater disability than that incurred from a single injury to a particular body part if the combination with any pre-existing condition hinders reemployment. There is no requirement that the pre-existing condition aggravated the injury, or that the injury aggravated the pre-existing condition, so long as there is a greater disability simply from the "combined effects" of the injury and the pre-existing condition.[4]
>
> 4. In fact, the statute provides for the aggravation of a pre-existing condition *as an alternative* to the combined effects provision.

*Ellison II,* 371 S.C. at 164, 638 S.E.2d at 666. "[A]n injured claimant is entitled to compensation and medical benefits for disability arising from a permanent physical impairment in combination with a pre-existing impairment if the combined effect results in a substantially greater disability." *Curiel v. Envtl. Mgmt. Servs. (MS),* 376 S.C. 23, 31, 655 S.E.2d 482, 486 (2007) (citing *Ellison v. Frigidaire Home Prods.,* 371 S.C. 159, 638 S.E.2d 664 (2006)).

South Carolina has adopted the "last injurious exposure rule," which

> places full liability upon the carrier covering the risk at the time of the most recent injury that bears a causal relation to the disability. Consistent with the rule that an employer takes its employee as it finds her, the last injurious exposure rule makes the insurer at risk at the time of the second injury liable even if the second injury would have been much less severe in the absence of the prior condition and even if the prior injury significantly contributed to the final condition. However, if the second injury is merely a recurrence of the first injury, then the insurer on the risk at the time of the original injury remains liable for the second.

*Geathers v. 3V, Inc.*, 371 S.C. 570, 577–78, 641 S.E.2d 29, 33 (2007) (quotations and citations omitted).

In *Gordon v. E.I. Du Pont De Nemours and Co.*, 228 S.C. 67, 76, 88 S.E.2d 844, 848 (1955) (citations omitted), the South Carolina Supreme Court held when

> a latent or quiescent weakened, but not disabling, condition resulting from disease is by accidental injury in the course and scope of employment aggravated or accelerated or activated, with resulting disability, such disability is compensable. The same principle is equally applicable whe[n] the latent, but not disabling, condition has resulted from a prior accidental injury. If the disability is proximately caused by the subsequent accidental injury, compensability is referable to that, and not the earlier one.

In *Geathers*, 371 S.C. at 580, 641 S.E.2d at 34, the supreme court applied *Gordon* because "(1) Claimant suffered a non-disabling back injury during a workplace accident; (2) Claimant's disability was caused by the second accident; and (3) the second injury 'aggravated or accelerated or activated' the pre-existing condition." The court further held the *Gordon* rule "reflects the essence of the last injurious exposure rule[,] which is to hold the insurer on the risk at the time of the second injury solely liable when the second injury aggravates the first injury." *Id.*

 Expert medical testimony is designed to aid the Appellate Panel in coming to the correct conclusion; therefore, the Appellate Panel determines the weight and credit to be given to the expert testimony. *Tiller v. Nat'l Health Care Ctr. of Sumter*, 334 S.C. 333, 340, 513 S.E.2d 843, 846 (1999). "Once admitted, expert testimony is to be considered just like any other testimony." *Id.* Accordingly, in deciding whether substantial evidence supports a finding of causation, we consider both the lay and expert evidence. *Id.* at 341, 513 S.E.2d at 847. While medical testimony is entitled to great respect, it should not be held conclusive irrespective of other evidence and the fact finder may disregard it if the record includes other competent evidence. *Id.* at 340, 513 S.E.2d at 846.

 The record contains substantial evidence supporting the Appellate Panel's finding Bartley's injuries for the buttocks, low back, right leg, dizziness, ringing in the ears, and psychological disorder were not caused by the Allendale inci-

dent. Bartley was doing well and returned to work after the surgery for her injury from the Allendale accident. Dr. Strohmeyer indicated the symptoms for which she is seeking to recover were likely related to the Richland incident or her unrelated lower back problem. Even Bartley testified she was no longer experiencing problems until she lifted some books at Richland One. Additionally, Bartley underwent lumbar fusion surgery, ankle surgery, and a hysterectomy that were all unrelated to the Allendale incident. Further, Bartley has a long history of suffering from depression and migraine headaches.

Although Bartley presented some evidence the Allendale incident aggravated Bartley's pre-existing conditions, the record also contains substantial evidence the Allendale incident did not cause or aggravate her conditions. Substantial evidence may support finding either the Richland incident aggravated her pre-existing conditions or that her pre-existing conditions were not aggravated at all because she was experiencing the same problems before the accident. Accordingly, *Ellison II* does not apply. The Appellate Panel is the ultimate fact finder and when the facts conflict, as they do here, its findings are conclusive. The record contains substantial evidence supporting the Appellate Panel's decision. Therefore, the circuit court's order is

**AFFIRMED.**

ANDERSON and WILLIAMS, JJ., concur.