709 S.E.2d 619

**Sandra BARTLEY, Claimant, Petitioner,**

**v.**

**ALLENDALE COUNTY SCHOOL DISTRICT, Employer, and S.C. School Boards Insurance Trust, Carrier, Respondents.**

**No. 26960.**

Supreme Court of South Carolina.

Heard March 1, 2011.

Decided April 11, 2011.

Jonathan R. Hendrix, of Williams, Hendrix, Steigner & Brink, of Lexington, for Petitioner.

Kirsten Leslie Barr, of Trask & Howell, of Mt. Pleasant, for Respondents.

Justice BEATTY.

We granted a petition for a writ of certiorari to review *Bartley v. Allendale County School District*, 381 S.C. 262, 672 S.E.2d 809 (Ct.App.2009), in which the Court of Appeals held Sandra Bartley was entitled to benefits for an injury to her neck that resulted in a thirty percent permanent disability to her back, but denied all other benefits. On appeal, Bartley contends her physical injury combined with her pre-existing impairments [1] resulted in a substantially greater disability that is compensable pursuant to *Ellison v. Frigidaire Home Products*, 371 S.C. 159, 638 S.E.2d 664 (2006). We reverse and remand.

## I. FACTS

On September 26, 2002, Bartley was working as a special needs teacher with the Allendale County School District when a child accidently collided with her during recess and knocked her down while trying to give her a hug. Bartley fell onto a chain link fence and landed on the ground on top of some tree roots, and the child fell on top of her.

Bartley sought medical treatment and was thereafter referred to an orthopedic medical practice. Bartley told the orthopedic physician that she could not lift her arm and that she had pain in her right shoulder and her arm muscles, as those were the problems that most concerned her. The orthopedic physician noted in early April 2003 that Bartley's original physician had unfortunately misdiagnosed Bartley as having tendonitis bursitis of the shoulder and had referred her

---

1. Bartley has a complex medical history of physical ailments along with psychological conditions such as panic attacks and depression that have affected her for much of her adult life.

for physical therapy, which worsened the condition.[2] However-
er, the orthopedic physician stated an MRI confirmed Bartley
had "severe foraminal stenosis at C5–6"[3] and that this was a
"cervical radiculopathy type process rather than shoulder
pathology" that was "clearly . . . related to her original injury
at work."

On May 14, 2003, Bartley underwent surgery for a cervical
fusion. After that, Bartley seemed to be doing better and
believed that she could return to teaching. Bartley filed a
Form 50 on July 18, 2003 noting injuries to her neck, right
arm, right hand, and left knee, as well as the occurrence of
migraine headaches.

In August 2003 Bartley began a new job teaching for
Richland County School District One in Columbia. From
August to October of 2003, Bartley began having more pain.
Bartley attributed this to her teaching duties, which required
her to work long hours and to lift a lot of equipment and other
items. In October 2003, a student picked up a desk and
threatened to throw it at Bartley. She was not physically
harmed, but according to Bartley, the threat brought back
memories of being injured in 2002 and made her fearful that
she could be injured again.

Bartley's physician prescribed a medical leave of absence
after October 2003, stating her "neuropathic parascapular
pain" was "definitely related to the incident on September 26,
2002" and was "most likely going to result in temporary or
total disability to perform her work as she did prior to these
injuries." Bartley returned to work briefly in January 2004

---

2. When Bartley reported pain throughout her body, the original physi-
cian also opined that she had fibromyalgia, which she had experienced
previously.

3. "Foraminal stenosis" refers to a narrowing (stenosis) of the foramen
(opening), i.e., the hole in a bone through which a spinal nerve passes
as it exits the spine. A foramen is at each level of the spine, with one
on each side. When the nerve becomes compressed, it can cause pain
and numbness, tingling, and sensory abnormalities on the affected side.
See generally http://www.nervous-system-diseases.com/foraminal-stenosis.
html. Depending on the location of the nerve being compressed,
stenosis can result in a variety of problems, including pain that travels
to the buttocks, leg, calf, and foot, or to the shoulder, arm, and hand.
See, e.g., http://www.laserspineinstitute.com/back_problems/foraminal_
stenosis/symptoms.

before her physician again prescribed a medical leave of absence.[4]

On December 10, 2004, Bartley filed a second Form 50 seeking a hearing. Bartley noted injuries to her cervical spine that resulted in pain, tingling and numbness down the right side of her body (including the neck/shoulder/arm/hand/buttocks/leg); dizziness; headaches; ringing in her ears; and emotional/mental problems (post-traumatic stress disorder).

A hearing was held in August 2005 before a commissioner of the South Carolina Workers' Compensation Commission. Bartley submitted a "Psychological Discharge Summary" dated January 4, 2005 from Dr. Clay Drummond, a clinical psychologist, who diagnosed her as having a pain disorder associated with both psychological factors and a general medical condition, post-traumatic stress disorder, chronic intractable pain, and cognitive degradation. Dr. Drummond stated: "It is most psychologically probable that her disorders were either caused by or exacerbated by her at work accident." Dr. Drummond found the "combination of [Bartley's] physical and emotional difficulties precludes her from doing any type of meaningful work" and that "[s]he will continue to need maintenance psychiatric medications and likely need periodic maintenance visits with a mental health professional."

Bartley also submitted a February 28, 2005 assessment from Joel D. Leonard, a Vocational Consultant, who reported that Bartley's "work-related injury from September 26, 2002 has had a severe and adverse effect on her ability to perform gainful work activity" and that she "is . . . totally disabled . . . due to the combined implications of her physio-vocational and psycho-vocational status." Leonard concluded "Bartley's work-related accident has had a catastrophic effect on her ability to access the open labor market and her ability to garner a weekly wage."

The commissioner found Bartley had suffered an injury to her neck in the 2002 accident and a resulting thirty percent

---

4. Bartley thereafter suffered several other conditions requiring medical treatment. In September 2004, she had fusion surgery in her lower back at levels four and five due to the discovery of a facet cyst. Bartley did not believe this lower back condition was related to her injury. In May 2005, she had surgery on her right ankle.

loss of use of her back, but that Bartley had failed to prove "that she suffered an injury to any body part other than her neck or that her psychological condition has worsened as a result of this injury." The commissioner denied Bartley's "claims for benefits for the buttocks, low back, right leg, dizziness, ringing in the ears or psychological disorder" on the basis they were barred by the statute of limitations and "these conditions were not caused by [Bartley's] injury at work." The commissioner stated that he "d[id] not doubt that the Claimant's future prospects of employment will be limited," but that he was "not allowed to stack her personal ailments with her work injury to make a finding of disability," citing *Ellison v. Frigidaire Home Products*, 360 S.C. 236, 600 S.E.2d 120 (Ct.App.2004) (*Ellison I*). The commissioner observed, "It appears that Dr. Drummond and Joel Leonard have done exactly that in making their assessments of employability."

The Appellate Panel affirmed the commissioner's order with certain amendments and adopted the commissioner's findings of fact and conclusions of law. Specifically, the Appellate Panel affirmed the commissioner's finding that Bartley suffered a thirty percent permanent loss of use of her back as a result of her neck injury that occurred on September 26, 2002. The Appellate Panel found the claims for benefits for the buttocks, low back, right leg, dizziness, ringing in the ears, and psychological overlay were not barred by the statute of limitations in S.C.Code Ann. § 42–15–40, although it agreed with the commissioner's finding that these conditions were not caused by Bartley's work injury.[5] The Appellate Panel found Bartley was not disabled from work because of her neck injury "since she began work with Richland School District One in August 2003." The circuit court and the Court of Appeals affirmed.

## II. STANDARD OF REVIEW

The Administrative Procedures Act ("APA") provides the standard for judicial review of workers' compensation decisions. *Pierre v. Seaside Farms, Inc.*, 386 S.C. 534,

---

5. This Court denied certiorari on the question whether the statute of limitations would preclude Bartley's claims. Consequently, no issue is before the Court in this regard.

689 S.E.2d 615 (2010); *Lark v. Bi–Lo, Inc.,* 276 S.C. 130, 276 S.E.2d 304 (1981). Under the APA, this Court can reverse or modify the decision of the Workers' Compensation Commission if the substantial rights of the appellant have been prejudiced because the decision is affected by an error of law or is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. *Transp. Ins. Co. v. South Carolina Second Injury Fund,* 389 S.C. 422, 427, 699 S.E.2d 687, 689–90 (2010) (citing S.C.Code Ann. § 1–23–380(5)(d), (e) (Supp.2009)).

The Commission is the ultimate fact finder in workers' compensation cases. *Jordan v. Kelly Co.,* 381 S.C. 483, 674 S.E.2d 166 (2009); *Shealy v. Aiken County,* 341 S.C. 448, 535 S.E.2d 438 (2000). As a general rule, this Court must affirm the findings of fact made by the Commission if they are supported by substantial evidence. *Pierre,* 386 S.C. at 541, 689 S.E.2d at 618. "Substantial evidence is that evidence which, in considering the record as a whole, would allow reasonable minds to reach the conclusion the Commission reached." *Hill v. Eagle Motor Lines,* 373 S.C. 422, 436, 645 S.E.2d 424, 431 (2007). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent the Commission's finding from being supported by substantial evidence." *Id.*

### III. LAW/ANALYSIS

Bartley contends the Court of Appeals erred in failing to reverse and remand her case to the Commission in light of this Court's decision in *Ellison v. Frigidaire Home Products,* 371 S.C. 159, 638 S.E.2d 664 (2006) (*Ellison II* ), which reversed the *Ellison I* case relied upon by the single commissioner and the Appellate Panel. Bartley contends she has suffered a greater disability than the specific injury to her neck. The Court of Appeals found *Ellison II* to be inapplicable.

Ellison fractured his leg while operating a forklift for Frigidaire and sustained a twenty percent impairment to his leg. *Ellison v. Frigidaire,* 360 S.C. 236, 238, 600 S.E.2d 120, 121 (Ct.App.2004). At the time of his accident, Ellison had been suffering for several years from hypertension and prostate

cancer. *Id.* After his accident, Ellison was also diagnosed with sleep apnea, diabetes, and congestive heart failure. *Id.*

Ellison argued the combination of his accidental leg injury and his other medical ailments rendered him totally and permanently disabled. *Id.* Frigidaire, in contrast, argued Ellison was limited to the scheduled member benefits of a twenty percent impairment for his leg because only his leg was injured in his workplace accident. *Id.*

The commissioner and the Appellate Panel concluded the combination of Ellison's workplace injury and his other ailments rendered him totally disabled, and the circuit court affirmed. *Id.* at 238–39, 600 S.E.2d at 121. The Court of Appeals reversed, finding S.C.Code Ann. § 42–9–400 (relied upon by Ellison) was inapplicable and that he was limited to benefits for a scheduled member (the leg) because there was no evidence that his workplace injury affected any body part other than his leg. *Id.* at 241, 600 S.E.2d at 122.

This Court reversed in *Ellison v. Frigidaire Home Products,* 371 S.C. 159, 638 S.E.2d 664 (2006). The Court held that Ellison's workplace injury, combined with his pre-existing physical conditions (including hypertension, sleep apnea, prostate cancer, diabetes, and congestive cardiac disease), rendered him physically unable to return to work and left him permanently and totally disabled. This Court interpreted section 42–9–400, which provided in relevant part as follows:

(a) If an employee who has **a permanent physical impairment from any cause or origin** incurs a subsequent disability from injury by accident arising out of and in the course of his employment, resulting in compensation and medical payments liability or **either,** *for disability that is substantially greater, by reason of the* **combined effects** *of the preexisting impairment and subsequent injury* **or** by reason of the aggravation of the preexisting impairment, than that which would have resulted from the subsequent injury alone, the employer or his insurance carrier shall in the first instance pay all awards of compensation and medical benefits provided by this Title; but such employer or his insurance carrier shall be reimbursed from the Second Injury Fund....

. . . .

(d) As used in this section, **"permanent physical impairment"** means any permanent condition, *whether congenital or due to injury or disease*, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment if the employee should become unemployed.

*Id.* at 161–62, 638 S.E.2d at 665.

This Court held there is no requirement that the pre-existing condition aggravated the work injury or that the work injury aggravated the pre-existing condition; rather, the question to be considered was whether the combined effects of the condition and the workplace injury resulted in a greater disability than would otherwise have existed:

The language of § 42–9–400(a) and (d) indicates the legislature clearly envisioned that a claimant may recover for greater disability than that incurred from a single injury to a particular body part if the combination with any pre-existing condition hinders reemployment. *There is no requirement that the pre-existing condition aggravated the injury, or that the injury aggravated the pre-existing condition, so long as there is a greater disability simply from the "combined effects" of the injury and the pre-existing condition.*

*Id.* at 164, 638 S.E.2d at 666 (emphasis added).[6]

■ In the current appeal, the Court of Appeals affirmed the determination of the Appellate Panel that Bartley was limited to benefits for an injury to her neck and a resulting thirty percent impairment to her back. *Bartley v. Allendale County Sch. Dist.*, 381 S.C. 262, 672 S.E.2d 809 (Ct.App.2009).

The Court of Appeals rejected Bartley's argument that she is totally disabled and that her psychological and physical problems affect more than just her back and hinder her employment, entitling her to additional benefits. The Court of

---

6. Section 42–9–400(a) was later amended to refer to a "disability that is substantially greater *and* is caused by aggravation of the preexisting impairment than that which would have resulted from the subsequent injury alone," and it has omitted the "combined effects" language. Act No. 111, Pt. II, § 3, 2007 S.C. Acts 599 (emphasis added). However, this change is applicable only to injuries that occur on or after July 1, 2007 and the parties do not argue the new version applies here.

Appeals ruled there was substantial evidence to support the Appellate Panel's determination that the 2002 accident did not cause or aggravate Bartley's other conditions. *Id.* at 274–75, 672 S.E.2d at 815. The Court of Appeals further observed that this Court's decision in *Ellison II* was not applicable to Bartley:

> *Although Bartley presented some evidence the Allendale incident* [when she was accidently knocked down by a student on September 26, 2002] *aggravated Bartley's preexisting conditions,* the record also contains substantial evidence the Allendale incident *did not cause or aggravate her conditions.* Substantial evidence may support finding either the Richland incident aggravated her pre-existing conditions *or that her pre-existing conditions were not aggravated at all because she was experiencing the same problems before the accident.* Accordingly, *Ellison II* does not apply. The Appellate Panel is the ultimate fact finder and when the facts conflict, as they do here, its findings are conclusive. The record contains substantial evidence supporting the Appellate Panel's decision.

*Id.* at 275, 672 S.E.2d at 815 (emphasis added). The "Richland incident" referred to above by the Court of Appeals occurred when a student threatened to throw a desk at Bartley.

In *Bartley* it appears the Court of Appeals focused on whether Bartley's 2002 accident *caused* her other medical conditions or whether it *aggravated* her pre-existing conditions. However, in *Ellison II* this Court held that aggravation was not a requirement but an alternative analysis: "There is no requirement that the pre-existing condition aggravated the injury, or that the injury aggravated the pre-existing condition, so long as there is a greater disability simply from the 'combined effects' of the injury and the preexisting condition." *Ellison II,* 371 S.C. at 164, 638 S.E.2d at 666.

The Court of Appeals recited the *Ellison II* standard in *Bartley* and noted that "the statute provides for the aggravation of a pre-existing condition *as an alternative* to the combined effects provision." *Bartley,* 381 S.C. at 273 n. 4, 672 S.E.2d at 814 n. 4. However, the Court of Appeals stated Bartley "has a long history of suffering from depression and

migraine headaches" as well as other ailments, and her problems could have been caused by circumstances that were unrelated to her 2002 workplace injury.[7]   *Id.* at 275, 672 S.E.2d at 815.   Thus, it seems to rely upon the absence of proof of aggravation or causation.

It is not the province of this Court or the Court of Appeals to engage in fact-finding, as that is solely the function of the Commission.   The orders of both the commissioner and the Appellate Panel (which incorporated much of the commissioner's order) were affected by an error of law.   The commissioner stated that he "d[id] not doubt that the Claimant's future prospects of employment will be limited," but that he "is not allowed to stack her personal ailments with her work related injury to make a finding of disability," citing *Ellison I*.   The Appellate Panel incorporated this finding into its order.   Thus, the Commission has not considered Bartley's claims applying the proper legal standard and has not made specific factual findings as to Bartley's other conditions because it made an initial determination that they could not be considered.

The Court of Appeals did not remand this case to the Commission but instead concluded *Ellison II* was not applicable.   In doing so, it arguably made findings of fact (such as the effect of the "Richland incident") that were not made by the Commission and it also did not properly apply the legal standard in *Ellison II* because it focused on an aggravation analysis instead of a combined effects analysis, although it recited the language in *Ellison II* that indicated aggravation was not required.

The Commission, had it considered the application of the law in *Ellison II*, would have made additional findings of fact pertinent to this analysis that are missing from the record.   Thus, a remand to the Commission is necessary to allow it to make the necessary factual findings and legal conclusions to resolve Bartley's claims.   *See, e.g., Fox v. Newberry County Mem'l Hosp.*, 319 S.C. 278, 280, 461 S.E.2d 392, 394 (1995) ("The duty to determine facts is placed solely on the Commis-

---

7.   To the extent Bartley contends her pre-existing conditions included a psychological disorder, this Court has previously held that a claimant is entitled to benefits for aggravation of a pre-existing condition of depression.   *See Anderson v. Baptist Med. Ctr.*, 343 S.C. 487, 541 S.E.2d 526 (2001).

sion and the court reviewing the decision of the Commission has no authority to determine factual issues but must remand the matter to the Commission for further proceedings. The reviewing court may not make findings of fact as to basic issues of liability for compensation, where, to do so, would impose upon the court the function of determining such facts from conflicting evidence." (internal citation omitted)); *cf. Smith v. NCCI, Inc.*, 369 S.C. 236, 252, 631 S.E.2d 268, 276–77 (Ct.App.2006) ("When an administrative agency acts without first making the proper factual findings required by law, the proper procedure is to remand the case and allow the agency the opportunity to make those findings.").[8]

## IV. CONCLUSION

Bartley has a long and complicated history of medical problems, and determining the extent, cause, and effects of her conditions has been the subject of debate among her treating physicians. The commissioner expressly applied the holding in *Ellison I* in finding Bartley was not allowed to "stack" her ailments in order to determine her overall disability, and this finding was adopted by the Appellate Panel. The commissioner made no additional findings after making the initial determination that other conditions could not be considered. The Commission's decision was affected by an error of law; therefore, we reverse the decision of the Court of Appeals and remand the matter to the Commission for consideration of Bartley's claims in light of this Court's decision in *Ellison II.*

**REVERSED AND REMANDED.**

TOAL, C.J., KITTREDGE and HEARN, JJ., concur.

PLEICONES, J., concurring in result only.

---

8. We note that many of the symptoms Bartley suffered (such as the pain radiating down to her buttocks, leg, and foot, and her complaints of numbness and tingling) have been reported to be associated with a diagnosis of foraminal stenosis, but this is a question of fact that should be evaluated by the Commission in the first instance, along with her arguments concerning the combined effects of her conditions.