722 S.E.2d 808

Henry **DINKINS**, Appellant,

v.

**LOWE'S HOME CENTERS, INC.—SUMTER, SC and Specialty Risk Services, LLC, Respondent.**

No. 4926.

Court of Appeals of South Carolina.

Heard Oct. 5, 2011.

Decided Jan. 4, 2012.

Rehearing Denied March 29, 2012.

Stephen Benjamin Samuels, of Columbia, for Appellant.

Weston Adams, III, Helen F. Hiser, C. Edward Rawl, Jr., and M. McMullen Taylor, all of Columbia, for Respondents.

LOCKEMY, J.

In this worker's compensation action, Henry Dinkins appeals the circuit court's decision that there is substantial evidence in the record to support the Appellate Panel of the Worker's Compensation Commission's (Appellate Panel) finding he is not entitled to total disability pursuant to section 42–9–10 of the South Carolina Code (1985). Specifically, Dinkins contends the Appellate Panel erred in (1) finding section 42–9–400 of the South Carolina Code (1985 & Supp.2005) inapplicable; (2) finding Dinkins is only entitled to compensation under section 42–9–30 of the South Carolina Code (1985); and (3) failing to rule on whether Dinkins' proof of diligent efforts to secure employment establishes a total loss of earnings under section 42–9–10. Dinkins also argues the circuit court erred in failing to remand the case with instructions to make specific findings of fact and conclusions of law affirmatively addressing total disability proven by unsuccessful "diligent efforts to secure employment." We affirm.

## FACTS

Dinkins began working for Lowe's Home Centers, Inc. (Lowe's) on April 17, 1999, as a Customer Service Representative and was eventually promoted to Paint and Home Décor Department Manager. On May 1, 2001, Dinkins suffered the first of three injuries at Lowe's when he injured his left ankle. The commissioner found Dinkins sustained a 40% permanent partial disability to the left leg. Dinkins then injured his right knee at Lowe's on June 22, 2002, and the commissioner found Dinkins sustained a 30% permanent partial disability to the right leg. Following the two incidents, Lowe's reassigned Dinkins to a customer service position to accommodate his physical injuries.

Dinkins injured his back on April 20, 2005, and reported his injury to Lowe's. After receiving treatment from Dr. Stacey, an orthopedic surgeon, Dinkins was diagnosed with "L4 radiculopathy." On December 5, 2005, Lowe's released Dinkins from work after Dr. Armsey (Dr. Stacey's partner) reported Dinkins was restricted from lifting items exceeding 20 pounds. Dinkins has not been employed since that time. Dr. Johnson reported Dinkins at maximum medical improvement on March 9, 2007, and stated Dinkins was a good candidate for "long-term anti-inflammatory medications" and was unlikely to need surgery in the future. However, Dr. Johnson also recommended Dinkins be placed on sedentary to light work with a lifting restriction of 10 pounds on an occasional basis. Dr. Johnson suggested avoiding repetitive bending and twisting if possible, because if Dinkins did not, his condition would be exacerbated. After examining Dinkins on June 2, 2006, Dr. Timothy Zgleszewski, stated "I believe that the lower back injury is a separate injury [from Dinkins' previous ankle and knee injury]...."

Dinkins met with two vocational experts, Adger Brown and Glen Adams. Brown stated Dinkins was permanently and totally disabled because of Dinkins' physical limitations combined with his age and lack of transferable skills. Brown also stated that "being sixty-three years old, [Dinkins] is already at an incredible deficit for anyone hiring him into any type of meaningful sustained employment." In contrast, Adams, after meeting with Dinkins, created a report that detailed all the

jobs and fields Dinkins is fit to work with his restrictions. Adams stated:

A labor market survey was conducted based on the factors outlined in this report in order to identify actual jobs for which Mr. Dinkins qualifies. A stable labor market was found to exist in his local labor market in the banking, financial and retail industries. Based on the strength of his prior work history in management positions, as well as the other factors outlined in this report, he is currently employable in his labor market.

Prior to working for Lowe's, Dinkins was employed in the banking industry, and he stated he could return to work in that industry. Dinkins conducted a job search in Columbia, Florence, Camden, and Sumter over the course of about three months. After sending out between twenty-five to thirty applications, he was either refused the job or had not heard back from the employer. Dinkins admitted he is not applying to any jobs that he could not do.

On January 23, 2008, the single commissioner found Dinkins' compensable injury was confined to his back; thus, he was limited to the scheduled disability compensation under section 42–9–30. Further, the commissioner found *Ellison v. Frigidaire Home Prods.*, 360 S.C. 236, 600 S.E.2d 120 (Ct. App.2004) (*Ellison I* ) was not applicable because Dinkins' pre-existing ankle and knee injuries did not combine to cause a greater disability. The commissioner also found even if *Ellison I* were applicable, Dinkins did not meet his burden of proving a total loss of earning capacity due to his work related injuries. She awarded Dinkins a 12% permanent partial disability to his back under section 42–9–30. Dinkins appealed the commissioner's decision to the Appellate Panel, and the Appellate Panel affirmed the commissioner's findings, and also found *Ellison v. Frigidaire Home Prods.*, 371 S.C. 159, 638 S.E.2d 664 (2006) (*Ellison II* ) was not applicable. Dinkins then appealed to the court of common pleas, and the court of common pleas affirmed the Appellate Panel's decision.

## STANDARD OF REVIEW

The Administrative Procedures Act ("APA") provides the standard for judicial review of workers' compensation deci-

sions. *Pierre v. Seaside Farms, Inc.*, 386 S.C. 534, 540, 689 S.E.2d 615, 618 (2010); *Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 276 S.E.2d 304 (1981). Under the APA, this court can reverse or modify the decision of the Appellate Panel if the substantial rights of the appellant have been prejudiced because the decision is affected by an error of law or is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. S.C.Code Ann. § 1–23–380(5)(d), (e) (Supp. 2010); *Transp. Ins. Co. v. South Carolina Second Injury Fund*, 389 S.C. 422, 427, 699 S.E.2d 687, 689–90 (2010).

■■■■ The Appellate Panel is the ultimate fact-finder in workers' compensation cases. *Jordan v. Kelly Co.*, 381 S.C. 483, 486, 674 S.E.2d 166, 168 (2009); *Shealy v. Aiken County*, 341 S.C. 448, 455, 535 S.E.2d 438, 442 (2000). As a general rule, this court must affirm the findings of fact made by the Appellate Panel if they are supported by substantial evidence. *Pierre*, 386 S.C. at 540, 689 S.E.2d at 618. "Substantial evidence is that evidence which, in considering the record as a whole, would allow reasonable minds to reach the conclusion the [Appellate Panel] reached." *Hill v. Eagle Motor Lines*, 373 S.C. 422, 436, 645 S.E.2d 424, 431 (2007). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent the [Appellate Panel's] finding from being supported by substantial evidence." *Id.*

## LAW/ANALYSIS

### I. Greater disability pursuant to section 42–9–400

■■■ Dinkins contends substantial evidence in the record supports his argument that his back injury in combination with his previous knee and ankle injuries resulted in a greater disability than the back injury alone, pursuant to section 42–9–400. Specifically, Dinkins argues the Appellate Panel erred in basing its findings on *Wigfall v. Tideland Utilities, Inc.*, 354 S.C. 100, 580 S.E.2d 100 (2003), and contends *Ellison II* is controlling. We disagree.

In *Wigfall*, the claimant's sole physical injury was a broken left femur stemming from a work-related accident. *Wigfall*, 354 S.C. at 102, 580 S.E.2d at 101. The single commissioner found that while Wigfall's injury, employment history, age,

and educational attainment rendered him totally disabled, the supreme court's ruling in *Singleton v. Young Lumber Co.*, 236 S.C. 454, 114 S.E.2d 837 (1960) limited him to an award under the scheduled member statute. *Id.* at 102–03, 580 S.E.2d at 101; *see Singleton*, 236 S.C. at 471, 114 S.E.2d at 845 ("Where the injury is confined to the scheduled member, and there is no impairment of any other part of the body because of such injury, the employee is limited to the scheduled compensation, even though other considerations such as age, lack of training, or other conditions peculiar to the individual, effect a total or partial industrial incapacity."). On appeal, the supreme court reaffirmed its ruling in *Singleton* that an injury to a scheduled member which is the sole cause of the claimant's disability may be compensated only under the scheduled injury statute. *Wigfall*, 354 S.C. at 106–07, 580 S.E.2d at 103.

In *Ellison*, the claimant was given a 20% permanent impairment rating to his leg after injuring it on the job. *Ellison II*, 371 S.C. 159, 161, 638 S.E.2d 664, 665 (2006). Ellison also had pre-existing physical conditions including hypertension, sleep apnea, prostate cancer, diabetes, and congestive cardiac disease, which, in combination with his workplace injury, rendered him physically unable to return to work after his accident. *Id.* Applying section 42–9–400, the commissioner concluded Ellison was totally disabled from the combined effect of his pre-existing conditions and his workplace injury to his leg. *Id.* at 162, 638 S.E.2d at 665. Section 42–9–400 provided in pertinent part:

(a) If an employee who has a permanent physical impairment from any cause or origin incurs a subsequent disability from injury by accident arising out of and in the course of his employment, resulting in compensation and medical payments liability or either, for disability that is substantially greater, by reason of the combined effects of the preexisting impairment and subsequent injury or by reason of the aggravation of the preexisting impairment, than that which would have resulted from the subsequent injury alone, the employer or his insurance carrier shall in the first instance pay all awards of compensation and medical benefits provided by this Title; but such employer or his insurance carrier shall be reimbursed from the Second Injury Fund....

. . . .

(d) As used in this section, "permanent physical impairment" means any permanent condition, whether congenital or due to injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment if the employee should become unemployed.[1]

S.C.Code Ann. § 42–9–400 (1985 & Supp.2005). On appeal, this court found section 42–9–400 merely entitled an employer's insurance carrier to be reimbursed by the Second Injury Fund; thus, *Singleton* should have been applied to the facts. *Ellison II*, 371 S.C. at 164, 638 S.E.2d at 666. Our supreme court reversed this court's decision, holding *Singleton* was inapplicable. *Id.* at 162–64, 638 S.E.2d at 665–66 (stating *Singleton* "stands simply for the proposition that impairment involving only a scheduled member is compensated under the scheduled injury statute and not the general disability statute"). It held that in contrast to Singleton, Ellison claimed total disability from the combined effect of his workplace injury and his pre-existing physical deficiencies. *Id.* at 162–63, 638 S.E.2d at 665–66. The supreme court found "[t]he language of § 42–9–400(a) and (d) indicates the legislature clearly envisioned that a claimant may recover for greater disability than that incurred from a single injury to a particular body part if the combination with any pre-existing condition hinders employment." *Id.* at 164, 638 S.E.2d at 666.

While distinguishable from the current appeal, the recent decision in *Bartley v. Allendale Cnty. Sch. Dist.*, 392 S.C. 300, 709 S.E.2d 619 (2011) is also relevant to our analysis. In *Bartley,* our supreme court determined this court arguably did some improper fact finding to make its ruling that the injury at issue did not cause or aggravate Bartley's other conditions, and therefore, Bartley was not entitled to compensation under section 42–9–400.[2] *Bartley,* 392 S.C. at 310–11, 709 S.E.2d at

---

1. Section 42–9–400(a) was later amended to refer to a "disability that is substantially greater *and* is caused by aggravation of the preexisting impairment than that which would have resulted from the subsequent injury alone," and it has omitted the "combined effects" language. Act No. 111, Pt. II, § 3, 2007 S.C. Acts 599 (emphasis added). However, this change is applicable only to injuries that occur on or after July 1, 2007.

2. The Appellate Panel found it could not "stack" Bartley's previous injuries with her current injuries; thus, it did not make any findings of

623–24. The supreme court then stated, "[I]t appears the Court of Appeals focused on whether Bartley's 2002 accident *caused* her other medical conditions or whether it *aggravated* her pre-existing conditions." *Id.* at 309, 709 S.E.2d at 623. However, "[t]here is no requirement that the pre-existing condition aggravated the work injury or that the work injury aggravated the pre-existing condition; rather, the question to be considered was whether the combined effects of the condition and the workplace injury resulted in a greater disability than would otherwise have existed." *Id.* at 308, 709 S.E.2d at 623 (citing *Ellison II,* 371 S.C. at 164, 638 S.E.2d at 666). The case was remanded to the Appellate Panel because "had [the Appellate Panel] considered the application of the law in *Ellison II,* [it] would have made additional findings of fact pertinent to this analysis that are missing from the record." *Id.* at 310, 709 S.E.2d at 624; *see Ellison II,* 371 S.C. 159, 638 S.E.2d 664 (2006).

Here, the commissioner erred in citing *Ellison I,* 360 S.C. 236, 600 S.E.2d 120 (Ct.App.2004), which was overturned. However, the Appellate Panel cited to the controlling case law in *Ellison II,* 371 S.C. 159, 638 S.E.2d 664 (2006). The Appellate Panel analyzed the facts in light of *Ellison II,* and determined that upon the evidence, *Ellison II* did not apply. Specifically, the Appellate Panel found:

> Based on the testimony and evidence presented, Claimant's current inability to work, *if any,* is secondary solely to his back injury. The knee and ankle injuries he sustained in his previous work-related accidents do not contribute to his disability as defined by § 42–1–10 [sic] in any way; therefore, Claimant's reliance on *Ellison* and § 42–1–400(a) [sic] is misplaced.

(citations omitted). Unlike the Appellate Panel in *Bartley,* the Appellate Panel here made findings of fact about Dinkins' previous injuries. In addition, the order cites a doctor's report which states the back injury is a "separate and distinct" injury from Dinkins' ankle and knee injury. The Appellate Panel found Dinkins' knee and ankle injuries did not combine

fact in regards to her previous injuries. Therefore, our supreme court found this court may have made its own findings of fact in regard to those previous injuries in order to come to its decision.

with his current back injury to create a greater disability, and therefore he could not establish total disability based upon section 42–9–400. While the Appellate Panel did not use the preferable language, "combined effects to cause a greater disability,"[3] it did cite the proper case law. We believe it viewed the facts appropriately in light of *Ellison II*, and substantial evidence in the record supports the Appellate Panel's decision that Dinkins did not have a greater disability as a result of the combined effects of his previous injuries and his current injury. Accordingly, we affirm the Appellate Panel's finding.

In view of our determination that Dinkins has not proven he has a greater disability as a result of the combined effects of his injuries, we need not reach the remaining issues relating to loss of earning capacity. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

## CONCLUSION

Based on the foregoing reasons, the trial court is **AFFIRMED.**

HUFF and PIEPER, JJ., concur.

---

**3.** The Appellate Panel specifically stated "do not contribute to his disability."